IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERTO PATINO, | § | |
| MARIA DEL ROSARIO MARTINEZ, | § | |
| MARIA MARI, | § | |
| RODOLFO R. TENREIRO, | § | |
| PATRICIA GONZALES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | Civil Action No. 4:14-cv-03241 |
| | § | |
| CITY OF PASADENA, | § | |
| Mayor JOHNNY ISBELL, | § | |
| Council members ORNALDO YBARRA, | § | |
| BRUCE LEAMON, DON HARRISON, | § | |
| PAT VAN HOUTE, | § | |
| CODY RAY WHEELER, PHIL CAYTEN, | § | |
| STEVE COTE, and | § | |
| DARRELL MORRISON, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS CODY RAY WHEELER, ORLADO YBARRA, AND DON HARRISON'S REPLY TO DEFENDANTS ISBELL, LEAMON, HOUTE, CAYTEN, COTE AND MORRISON'S RESPONSE TO MOTION TO STRIKE

NOW COMES Defendants, Cody Ray Wheeler, Ornaldo Ybarra, and Don Harrison, ("Defendants" and "Councilmembers"), named in their official capacity, and file this Reply to Defendants Isbell, Leamon, Houte, Cayten, Cote and Morrison's Response to Motion to Strike.

### I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

Council members Wheeler, Ybarra and Harrison cannot be forced to receive advice, counseling and representation from attorneys whom they did not select and, in this case, have a legal conflict in representing them.

## II.    ARGUMENT

### A.  Defendants have a constitutional right to retain counsel of their choice.

Defendants have a constitutional right, which derives from due process, to retain counsel in this matter. *See Potashnic v. Port City Construction Co.,* 609 F.2d 1101, 1117-19 (5th Circ.) *cert. denied,* 449 U.S. 820 (1980). The Fifth Circuit has recognized the right to counsel in civil matters, including "the right to choose the lawyer who will provide that representation." *Texas Catastrophe Prop. Ins. Ass'n v. Morales,* 975 F.2d 1178, 1181 (5th Cir. 1992) (quoting *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 at 1257 (5th Cir. 1983) (holding litigants have the right to be represented by counsel, which implies a right to choose their lawyer).[1]

Now, it is true that the right of Defendants to elect their own representation is not absolute. *McCuin,* 714 F.2d 1255 at 1262. If a party seeking to impinge on this right can overcome its burden to show that "compelling reasons exist," the court may, at its discretion, override this right and prevent a Defendant from choosing his own representation. *Id.* However, in *Texas Catastrophe Property Insurance Association v. Morales* (*Morales*), the Fifth Circuit held that this is an "extraordinary burden" to show sufficient reason that a court is compelled to "deprive [a party of the] fundamental right to choose its own counsel." *Morales*, 975 F.2d 1178 at 1181 (holding that the Texas Attorney General's office did not meet its burden of showing that a state created organization was a part of the state and should be prohibited from obtaining independent counsel).[2] At issue in *Morales* was the ability of a state created organization that was fiscally independent from the state to sue the state.[3] *Morales*, 975 F.2d 1255, 1178. The Fifth Circuit

---

[1] While the First Circuit has held a civil litigant has a constitutional right to retain counsel in *Gray v. New England*
[2] In *Texas Catastrophe Property Insurance Association v. Morales* (*Morales*), the Fifth Circuit struck down a state statute requiring the state's attorney general to represent a state created group, Catastrophe Property Insurance Association (CATPOOL), in civil actions. *Texas Catastrophe Prop. Ins. Ass'n*, 975 F.2d 1178.
[3] The court deemed that because CATPOOL's profits did not go to the state, losses were assessed to member companies, and partial subsidization of losses through allowance of tax credits did not eliminate risk to private
Endnotes continued on next page.

struck down a state statute requiring the state's attorney general to represent the organization in civil actions, and granted the assertion that the organization had a constitutional right to choose its own counsel in a civil action against the state. *Id.*

Like the Plaintiffs in *Morales*, Councilmembers Wheeler, Ybarra, and Harrison have a legitimate interest, rooted in equity of law and due process, to elect independent representation. Defendants have distinct footing in this matter that separates them from the City, including the mayor and other City councilmember Defendants. Councilmembers have a distinct right to their own counsel when a legal conflict exists, as explained *supra.* Even were these members to have supported the redistricting plan in issue, given the unique effects a redistricting plan has on each of them, they are entitled to their own counsel. Should the Court sustain Plaintiffs' objections to the plan, the Court could be in the position to impose an interim plan, the drawing of which will uniquely affect each of the councilmembers. In such a circumstance, the Court cannot constitutionally require them to speak with one voice through one set of counsel who, through their filed pleadings and underlying actions in this case and the events leading up thereto, have demonstrated that they are not working in the interests of these individuals.

Furthermore, contrary to what counsel for the City asserts, Defendants do not have the burden of proving their right to elect their choice of counsel has not been superseded by other factors. It is implied from Fifth Circuit precedent that it is an automatic right that can only be taken away if the City overcomes the "extraordinary" burden to show any compelling reason why the court should strip Defendants of the right to choose their own representation. *See McCuin* 714 F.2d 1255. The City has failed to do so.

---

insurers' capital, the organization was not a part of the State of Texas, and CATPOOL could, therefore, assert its constitutional right to choose their own counsel in a civil action against the state. *Id.*

### B. A Conflict of Interest Exists That Bars Representation

Councilmembers Wheeler, Ybarra, and Harrison, through their chosen attorneys, have emphasized on numerous occasions the critical issue that a conflict of interest exists between them and Mr. Heath and Mr. Locke. Case law provides clear precedent that when a conflict of interest exists between an attorney and client, or two co-defendants, an attorney cannot represent the client unless sufficient disclosure and waiver has been established. In *McCuin v. Texas Power & Light Co.* (*McCuin*), the Fifth Circuit drew a parallel to the Federal Rule of Criminal Procedure 44(c), noting that if a lawyer enrolls to represent two defendants in a criminal case, "even if an actual conflict is not apparent," the presiding judge must inform the two defendants of the conflict of interest.[4] *McCuin,* 714 F.2d 1255 at 1264. *See* Fed. R. Crim. P. 44(c)(and notes thereto). The judge must also determine whether there is a possibility that a conflict will arise and "whether the effective and fair administration of justice would be adversely affected by continued joint representation. *Id.* at 1263. The court warned that if a conflict develops at a later time when new counsel would be impractical, the defendant might have waived the right to seek separate counsel of their choice. *Id.* The court in *McCuin* draws a parallel to civil cases, noting that just like in criminal courtrooms, there is a need for this type of effective administration in civil courtrooms. *Id.*

Here, these councilmembers opposed and voted against the redistricting plan challenged. Counsel for the majority of councilmembers was actively involved in the preparation and adoption of the challenged plan. Furthermore, the past events reveal to the minority councilmembers that they will not receive timely information concerning events in this litigation from the majority counsel. Moreover, should the case move to discovery, the minority

---

[4] Although the issue in *McCuin* revolved around the risk of delays in trial when hiring of an attorney specifically to create a conflict of interest to force a judge to recuse himself, the holding is applicable in this matter.

councilmembers will be forced to coordinate discovery answers with counsel working against their interests. Indeed, the minority councilmembers voted against the redistricting plan, at least in part, *because* of their belief that such plan is in violation of federal law — an opinion they stated during the debate of the plan. To force these councilmembers to coordinate answering discovery and preparing for and attending depositions with counsel who has and will continue to actively work against their interest is a violation of constitutional protections described above, but it also creates a legal conflict that prevents one group of attorneys from representing the interests of all sitting councilmembers.

As previously stated in prior communications to the City's attorneys, Texas Disciplinary Rules of Professional Conduct prohibit simultaneous representation of co-defendants where a potential conflict of interest exists in civil matters, even if their interests are not directly adverse. *See* TEX. DISCIPLINARY. R. PROF. CONDUCT, 1.06(b), (comments 3, 6). This "impermissible conflict" may occur due to "substantial discrepanc[ies]" in party testimony, among other things. *See* TEX. DISCIPLINARY. R. PROF. CONDUCT, comment 3(b).

Counsel for the majority asserts in their response to the motion that they are unaware of any conflict of interest between the City and these three defendants. Doc. 19, p. 2. Interestingly enough, however, in the same response, they point to precise conflicts that are recognized by Texas Disciplinary Rules of Professional Conduct in the later sections of their misguided argument. Doc. 19, p. 6 (". . . there is a possibility that the city and some of its councilmembers will assert separate and potentially conflicting defenses . . . [a]n examination of the answer filed by the three official-capacity defendants [Doc. 13] reveals that it takes different positions than the City does in its Answer [Doc 11]."). Attorneys for the three councilmembers, as well as the attorneys for the City and remaining councilmembers, have all recognized and highlighted the

5

reasons why independent counsel for the three councilmembers is needed based on grounds that a conflict of interest exists.

Furthermore, the three councilmembers have not given their consent, nor have they waived this conflict of interest, thereby prohibiting the majority counsel from representing them. *See* TEX. DISCIPLINARY. R. PROF. CONDUCT, comment 7.

### C. Plaintiffs Request for Injunction Further Emphasizes the Need for Independent Representation.

Contrary to the City's position that "council-members have no interest separate from that of the city," issues surrounding the means of enacting the redistricting plan, as well as the effect of the redistricting plan itself, place the council-members in a position where there are specified interests at issue. Councilmember Defendants are not "subsumed within [the identity]. . . of the city." Doc. 19 at p. 1. Nor are they "nominal" Defendants.  First, the map and any changes to the districts themselves personally impact the three councilmembers who will be required to run and serve within the geographic boundaries settled upon.  Second, the Plaintiffs request the Court to order this City Council to adopt revisions to the challenged redistricting plan and the Plaintiffs seek attorney's fees.  Suit against the district itself is barred under sovereign immunity, but such action can be asserted against government officers to force their compliance with federal law. The three councilmembers have a personal stake in the outcome of this litigation, but equally important is that should Plaintiffs prevail, the three councilmembers will be ordered to take specified actions.

Defendants are being sued in their official capacity[5] and, unlike a matter where the remedy requested is for monetary relief, if Plaintiffs prevail the remedy sought is injunctive

---

[5] Under Fed. R. Civ. P. 17(d), an individual may be sued in their official capacity.

relief. As the outcome of this case could have a direct impact on each councilmember, each Defendant has a specific stake in this matter.

Furthermore, the non-monetary relief requested distinguishes it from cases the City cites to in its Response. *See* Doc. 19. The City makes an incongruent comparison between this matter and *Kentucky v. Graham* (*Graham*), a case in which the Commissioner of the Kentucky State Police was the named defendant and the Commonwealth was only being sued for attorney's fees in the event the plaintiffs prevailed, rather than for damages on the merits of the case. *Kentucky v. Graham,* 473 U.S. 159, 162 (1985). The Supreme Court upheld the decision of the lower courts dismissal of the *Commonwealth*, not the Commissioner, as a defendant in the matter (emphasis added). *Graham*, 473 U.S. 159. This decision fell on the fact that 1) the Commonwealth was only being sued for attorney's fees on the occasion the plaintiffs prevailed and 2) the Commissioner was being sued in a *personal* capacity (emphasis added), thereby prohibiting fees assessed on the Commonwealth should the plaintiff prevail in federal court due to Eleventh Amendment requirements. *Id.*

The narrow issue reviewed was whether a personal-capacity suit against an official can render a city liable for damages. *Id.* Nowhere in the decision does the Court address the issue of whether or not public official defendants can maintain independent council of their choice when a conflict of interest arises. On the contrary, the Supreme Court recognizes the existence of suits against named official capacity defendants, as well as the validity of distinct and independent named official-defendants by noting that in official capacity actions, the government entity can be liable for relief on the merits and for fees if a plaintiff prevails over a named official-capacity individual. *Id.* at 171. ("Only in an official-capacity action is a plaintiff who prevails entitled to look for relief, both on the merits and for fees, to the governmental entity").

7

Attorneys for the City also misapply *Hafer v. Melo*, inaccurately asserting that "since official capacity defendants assum[e] the identity of their employer, the state, they [are] not considered to be persons for purposes of [§1983]." Doc. 19 at 4, footnote 3. *See Hafer v. Melo*, 502 U.S. 21, 27. The only issue taken up by the Court in *Hafer* was whether or not state officers can be held personally liable for actions taken in their official capacity under §1983. *Id.*, 24. However, the court also noted that, "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 362-363 (quoting Graham v. Kentucky, 473 U.S. 159 at 167).

In another case attorneys for the City rely upon, *Monell*, the Supreme Court recognized that official capacity defendants can be sued under §1983 in the same manner a locality can be. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 n. 55 (1978) (. . .our holding today that local governments can be sued under §1983 necessarily decides that local government officials sued in their official capacities are 'persons' under §1983 in those cases in which, as here, a local government would be suable in its own name."). Again, this says nothing about whether officers sued in their official capacity must accept representation by attorneys working against their interests.

In another failed attempt to cite precedent on the issue of whether or not Defendants have the right to elect their own representation, attorneys for the City try to draw a similarity between this matter and *Bender v. Williamsport Area School District* (*Bender*). *See* Doc. 19 pgs. 4 (n. 3), 5. In *Bender*, when the rest of a defendant school board did not contest the findings of the lower courts, the Supreme Court reviewed whether or not a single board member respondent, in his official capacity, had the power to appeal the decision of the lower courts. *Bender v.*

8

*Williamsport Area Sch. Dist.*, 475 U.S. 534, 544. The Court held that in his official capacity as a school board member, the respondent had no right to appeal on his own when other defendants abated to the lower courts decisions. *Bender*, 475 U.S. 534, 544 ("Generally speaking, members of collegial bodies do not have standing to perfect an appeal the body itself has declined to take."). Here, however, the three city councilmembers are not seeking to appeal a decision of this Court, they are merely exercising their right to choose counsel of their choice, and are trying to protect themselves against the certain impending conflicts that will arise should they be stripped of that right.

While the list of misconstrued and misapplied case law is not limited to the aforementioned cases, the three councilmembers would like to highlight that none of the cases cited to in the City's Response provide any grounds for prohibiting councilmembers that have a conflict of interest with the City's representation to choose their own attorneys to defend them against the charges alleged. *See* Doc. 19. Absent such specific authority, this Court should not force the minority councilmembers to receive representation from attorneys not of their selection.

### III.  CONCLUSION

For the forgoing reasons the Court should grant Defendants Motion to Strike Unauthorized Pleadings and otherwise allow these parties to be represented by their own counsel.

Dated this 18th day of February, 2015.

                                        Respectfully Submitted,

                                        **BRAZIL & DUNN**

                                        /s/*Chad W. Dunn*
Chad W. Dunn - 24036507
K. Scott Brazil - 02934050
4201 Cypress Creek Parkway, Suite 530
Houston, Texas 77068
Telephone:  (281) 580-6310
Facsimile:   (281) 580-6362
chad@brazilanddunn.com

Rick Molina
Molina Law Firm, P.C.
11550 Fuqua St., Suite 580
Houston, Texas 77034
Telephone: (281) 922-4300
Facsimile: (281) 922-4325
rmolina@molinalawfirm.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 18th day of February, 2015, I electronically submitted the foregoing document with the Clerk of the United States District Court for the Southern District of Texas, Houston Division, using the electronic case filing system of the Court. I have served counsel of record listed below via electronic transmission through the Court's ECF system:

Nina Perales
nperales@maldef.org
Ernest I. Herrera
eherrera@maldef.org
Mexican American Legal Defense and
Educational Fund
110 Broadway, Suite 300
San Antonio, TX 78205

Gene Locke
genelocke@andrewskurth.com
Kathryn K Alrich
katiealrich@andrewskurth.com
Andrews Kurth, LLP
600 Travis, Suite 4200
Houston, Texas 77002

C. Robert Heath
bheath@bickerstaff.com
Gunnar P. Seaquist
gseaquist@bickerstaff.com
Bickerstaff Heath Delgado Acosta, LLP
3711 S. MoPac Expressway
Building One, Suite 300
Austin, Texas 78746

                                            /s/ *Chad W. Dunn*
                                           Chad W. Dunn