IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERTO PATINO, | § | |
| MARIA DEL ROSARIO MARTINEZ, | § | |
| MARIA MARI, | § | |
| RODOLFO R. TENREIRO, | § | |
| PATRICIA GONZALES, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:14-cv-03241 |
| | § | |
| CITY OF PASADENA, | § | |
| Mayor JOHNNY ISBELL, | § | |
| Council members ORNALDO YBARRA, | § | |
| BRUCE LEAMON, DON HARRISON, | § | |
| PAT VAN HOUTE, | § | |
| CODY RAY WHEELER, PHIL CAYTEN, | § | |
| STEVE COTE, and | § | |
| DARRELL MORRISON, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiffs are Hispanic registered voters of the City of Pasadena who challenge the recently-adopted hybrid election system for Pasadena City Council. This is an action under the Fourteenth and Fifteenth Amendments to the United States Constitution and the Voting Rights Act of 1965, 42 U.S.C. §1973.

2. Plaintiffs seek a declaratory judgment that the hybrid election system for Pasadena City Council violates their civil rights by unlawfully diluting the voting strength of Hispanics. Plaintiffs further seek a declaratory judgment that the hybrid election system for Pasade-

na City Council intentionally discriminates against them on the basis of race and national origin. Plaintiffs seek a permanent injunction prohibiting the calling, holding, supervising or certifying of any future Pasadena City Council elections under the hybrid election system. Plaintiffs seek the creation of an election system for Pasadena City Council that will not cancel out, minimize or dilute the voting strength of Hispanic voters. Plaintiffs further seek an order subjecting the City of Pasadena to the preclearance requirement of section 5 of the Voting Rights Act under 42 U.S.C. § 1973a(c). Plaintiffs also seek costs and attorneys' fees.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3) & (4), § 2201, and § 2202 for causes of action arising from 42 U.S.C. § 1973. Jurisdiction for Plaintiffs' claims under the Fourteenth and Fifteenth Amendments to the U.S. Constitution is based upon 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Jurisdiction for Plaintiffs' claim for attorney's fees is based on 42 U.S.C. §§ 1973l(e) and 1988. Venue is proper in this court under 28 U.S.C. § 1391(b) because Defendant is located in this district and the events giving rise to the claims occurred in this district.

## PARTIES

Plaintiffs

4. ALBERTO PATINO is an Hispanic citizen of the United States and a resident and registered voter of the City of Pasadena, Texas.

5. MARIA MARI is an Hispanic citizen of the United States and a resident and registered voter of the City of Pasadena, Texas.

6. PATRICIA GONZALES is an Hispanic citizen of the United States and a resident and registered voter of the City of Pasadena, Texas.

7. MARIA CARMEN MENDOZA is an Hispanic citizen of the United States and a resident and registered voter of the City of Pasadena, Texas.

8. FRANK BORREGO is an Hispanic citizen of the United States and a resident and registered voter of the City of Pasadena, Texas.

9. GABRIEL ROCHA BARRETO is an Hispanic citizen of the United States and a resident and registered voter of the City of Pasadena, Texas.

10. RICHARD SERNA is an Hispanic citizen of the United States and a resident and registered voter of the City of Pasadena, Texas.

11. JOSEPH JOHN MARQUEZ is an Hispanic citizen of the United States and a resident and registered voter of the City of Pasadena, Texas.

Defendants

14. Defendant CITY OF PASADENA is a home rule municipality established pursuant to the laws of the State of Texas.  The CITY OF PASADENA is located in Harris County, Texas, and is a political subdivision within the meaning of and subject to the requirements of the Voting Rights Act of 1965, 42 U.S.C. § 1973.

15. During all times mentioned in this complaint, Defendant and its agents were acting under color of law:  under color of the statutes, laws, charter, ordinances, rules, regulations, customs and usages of the City of Pasadena and the State of Texas.

## STATEMENT OF FACTS

17. According to the U.S. Census American Community Survey latest estimate (2008-2012), the Pasadena citizen voting age population is 43% Hispanic. The Hispanic citizen voting age population in Pasadena has grown rapidly in recent years -- from 30.6% in 2000 to 43% in 2012.

18. The municipal government provided by the Pasadena Charter is known as "Mayor-Council Government." The powers of the City are vested in and exercised by an elected Council comprised of a Mayor and eight Council members ("City Council") which is empowered by the Charter to enact legislation, adopt budgets, and determine policies of the City. When there is a tie in voting among the eight members of the council, the Mayor casts the deciding vote.

19. Upon information and belief, since 1992 eight city council members have been elected by single member districts. In this 8-district system, each council member resides in and is elected by voters who reside in a particular district.

20. In the 8-district redistricting plan in effect in 2013, Hispanics constituted the citizen voting age majority of four of the eight districts. A fifth district, which was represented by an Hispanic council member, contained 45.7% Hispanic citizen voting age population.

21. Mayor Johnny Isbell, and Council members Ornaldo Ybarra, Bruce Leamon, Don Harrison, Pat Van Houte, Cody Ray Wheeler, Phil Cayten, Steve Cote, and Darrell Morrison were members of the Pasadena City Council from July 2013 through May 2015. Members of the City Council are charged with the responsibility of calling for and conducting elections for the City of Pasadena.

22. In the May 2013 municipal election, an Hispanic candidate unsuccessfully challenged the incumbent Mayor Johnny Isbell.

23. On June 25 2013, in *Shelby Cnty., Ala. v. Holder*, 133 S. Ct. 2612 (2013), the U.S. Supreme Court invalidated the geographic coverage formula of section 5 of the Voting Rights Act, codified at 42 U.S.C. 1973b(b). Following the Supreme Court's decision in *Shelby*, Texas and its sub-jurisdictions, including the City of Pasadena, were no longer required to secure federal approval before implementing changes to their voting systems.

24. In early July 2013, Mayor Isbell called for the creation of a committee of Pasadena citizens to consider a potential bond election. Mayor Isbell appointed the members of the bond election Committee after receiving recommendations from members of the City Council.

25. The Committee met on July 18, 2013 and July 23, 2013 and discussed whether to recommend a bond proposal for the upcoming November city election.

26. At the Committee's third meeting, held on July 25, 2013, Mayor Isbell proposed that the Committee recommend amendments to the City Charter. Mayor Isbell's proposed charter amendments included an amendment that would modify the city's election system by converting one or more of the eight existing single-member districts to at-large districts.

27. Mayor Isbell explained at the July 25, 2013 meeting that the City could adopt the change in its election scheme without having to submit the change for federal review following the U.S Supreme Court decision one month earlier in *Shelby*.

28. The bond election Committee met for the fourth time on July 29, 2013. The Committee's meeting was closed to the public and closed to members of the City Council.

29. Following its fourth meeting, the Committee recommended that the City submit four propositions to the voters in the upcoming November election for authority to sell bonds. The Committee declined to recommend that a proposal be placed on the November ballot to change the City's election system.

30. On August 13, 2013, the Mayor asked the City Council to consider an ordinance placing the four city bond propositions on the November ballot.

31. On August 15, 2013, Mayor Isbell circulated a memo to the City Council announcing that he had decided to withdraw the bond propositions recommended by the bond election Committee. Mayor Isbell proposed instead an election to amend the City Charter. Mayor Isbell explained that although the bond election Committee had not recommended placing a proposal on the ballot related to redistricting, he wanted the City Council to authorize a Charter amendment election to change the voting system.

32. On August 20, 2013, the City Council passed on first reading Ordinance 2013-126, calling a Special Election to be held on Tuesday, November 5, 2013, for the purpose of submitting to the voters of Pasadena various propositions for amending the City Charter, including Proposition 1 -- a change to the City's system of electing members of the City Council.

33. Proposition 1 changed the City's election system from eight single member districts to six single member districts and two at-large districts ("6-2 system"). The vote was 4-4 and the Mayor cast the deciding vote in favor of placing Proposition 1 on the November ballot. The four City Council members who voted against placing Proposition 1 on the ballot represented majority Hispanic voting age population districts.

34. During discussion of Proposition 1 at the August 20, 2013 Council meeting, Councilmember Don Harrison stated that he believed Proposition 1 violated the federal Voting Rights Act.

35. On August 22, 2013, the City Council passed Ordinance 2013-126 on final reading. The vote to place Proposition 1 on the November ballot was again 4-4 and the Mayor cast the deciding vote in favor of placing Proposition 1 on the ballot. The four City Council members who voted against placing Proposition 1 on the ballot represented majority Hispanic voting age population districts.

36. On November 5, 2013, a majority of Pasadena voters voted in favor Proposition 1. Voting on Proposition 1 was polarized along racial lines.

37. On March 4, 2014, the City Council held a council workshop at which Mayor Isbell presented three alternative redistricting plans for the new 6-2 hybrid election system for City Council. Mayor Isbell indicated that he favored "Plan 2."

38. At a City Council public hearing on redistricting, held on March 18, 2014, Mayor Isbell again indicated that he favored "Plan 2." At this meeting, Council members and members of the public raised concerns about the legality of the maps.

39. At the April 1, 2014 City Council meeting, Council member Pat Van Houte expressed concerns over the legality of the redistricting plan. While discussing her concerns regarding the legality of Plan 2, Council member Van Houte exceeded her debate time limit of three minutes and Mayor Isbell ordered armed police officers to remove her from the council chambers. When Council member Van Houte was removed from the chamber,

three more council members departed in protest. Plan 2 was passed on first reading with four council members and the Mayor in attendance.

40. On April 15, 2013, the City Council passed redistricting Plan 2 on final reading.

41. The change from eight single member districts to a hybrid system of six single member districts and two at-large seats reduced the number of districts in which Hispanics comprise the majority of the citizen voting age population from four to three.

42. The change from eight single member districts to a hybrid system of six single member districts and two at-large seats will reduce Hispanic voting strength and will impede Hispanic voters' ability to elect candidates of choice in subsequent in Pasadena City Council elections.

43. The Hispanic population of the City of Pasadena is sufficiently geographically compact to comprise the majority of the citizen voting age population in four of eight single member council districts.

44. Hispanic voters in Pasadena are politically cohesive.

45. Anglo (White Non-Hispanic) voters vote sufficiently as a bloc to enable them – in the absence of special circumstances, such as the Hispanic candidate running unopposed – usually to defeat the Hispanic voters' preferred candidates in Pasadena.

46. The hybrid election system for Pasadena City Council interacts with social and historical conditions to cause an inequality in the opportunity of Hispanic voters to elect representatives of their choice as compared to Anglo voters.

47. The policies underlying the City's conversion from eight single member districts to a hybrid 6-2 election system are tenuous.

48. Defendant's adoption of the hybrid election system for City Council elections was characterized by departures from substantive and procedural norms.

49. The sequence of events leading up to the City's adoption of a hybrid system for City Council elections includes the rapid growth of the Hispanic citizen voting age population in Pasadena, a challenge to Mayor Isbell by a Hispanic candidate in 2013, and the impending likelihood that Hispanic voters would be able to elect their candidates of choice in a majority of single member districts in the 8 district plan.

50. Section 3 (c) of the Voting Rights Act of 1965, 42 U.S.C. 1973a(c), authorizes a federal court, following a finding "that violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred within the territory of such State or political subdivision," to order a jurisdiction to obtain federal preclearance of its election changes pursuant to section 5 of the Voting Rights Act. Section 3 (c) is a permanent provision of the federal Voting Rights Act.

51. Section 2 of the Voting Rights Act of 1965, 42 U.S.C. 1973, applies nationwide and prohibits voting practices and procedures that result in the denial or abridgement of the right of any citizen to vote on account of race, color or membership in a language minority group. Section 2 is a permanent provision of the federal Voting Rights Act.

52. Plaintiffs have no adequate remedy at law other than the judicial relief sought herein and unless Defendant is enjoined from using the hybrid election system for Pasadena City Council, plaintiffs will be irreparably harmed by the violation of their statutory and constitutional rights.

**CAUSES OF ACTION**

## COUNT 1

*Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution*

53. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

54. The hybrid election system for Pasadena City Council discriminates against Plaintiffs on the basis of race and national origin in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

## COUNT 2

*Fifteenth Amendment to the U.S. Constitution*

55. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

56. The hybrid election system for Pasadena City Council discriminates against Plaintiffs on the basis of race and national origin in violation of the Fifteenth Amendment to the U.S. Constitution.

## COUNT 3

*Section 2 of the Voting Rights Act of 1965*

57. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

58. The hybrid election system for Pasadena City Council results in a denial or abridgment of the right to vote of plaintiffs on account of their race, color, or ethnicity, by having the effect of canceling out or minimizing their individual voting strength as minorities in Texas. The hybrid election system for Pasadena City Council does not afford plaintiffs an equal opportunity to participate in the political process and to elect representatives of their choice, and denies plaintiffs the right to vote in elections without distinction of race,

color or previous condition of servitude in violation of 42 U.S.C. Section 1973. The hybrid election system for Pasadena City Council also intentionally discriminates against plaintiffs on the basis of their race and national origin.

### **PRAYER**

WHEREFORE, Plaintiffs pray that this Court:

a. Assume jurisdiction of this action;

b. Issue a declaratory judgment finding that the hybrid election system for Pasadena City Council illegally and unconstitutionally dilutes the voting strength of Hispanic voters in Pasadena, violates section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the U.S. Constitution, and is unlawful, null and void;

c. Permanently enjoin Defendant from calling, holding, supervising or certifying any elections for city council under the hybrid election system;

d. Pursuant to 42 U.S.C. 1973a(c), issue an order requiring Pasadena to preclear its election changes;

e. Set a reasonable deadline for Defendant to enact or adopt a redistricting plan for Pasadena City Council that does not dilute, cancel out or minimize the voting strength of Hispanic voters;

f. If Defendant fails to enact or adopt a valid redistricting plan by the Court's deadline, order a new redistricting plan for Pasadena City Council that does not dilute, cancel out or minimize the voting strength of Hispanic voters;

g.  Adjudge all costs against Defendant, including reasonable attorneys' fees and costs;

h.  Retain jurisdiction to render any and all further orders that this Court may deem appropriate;

i.  Grant any and all further relief to which Plaintiffs may show themselves to be entitled.

Dated: July 1, 2015                                  Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Attorney-in-charge
Texas Bar No. 24005046
SDTX Bar No. 21127
Ernest Herrera
Texas Bar No. 24094718
(*pro hac vice*)
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, TX 78205
Tel: (210)224-5476
Fax: (210)224-5382

CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 1st day of July, 2015.

*/s/ Nina Perales*
Nina Perales