UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____
                                                  )
                                                  )
ALBERTO PATINO ET AL              )
                    Plaintiff,            )
                                                  )
     v.                                         )   Civil Case No. 4:14-cv-03241
                                                  )
CITY OF PASADENA, TEXAS ET AL )
                    Defendant.         )
                                                  )
_____)


## CITIZENS TO KEEP PASADENA STRONG PAC's MOTION TO QUASH RULE 45 SUBPOENA

Plaintiffs in the above-styled action served a Federal Rule of Civil Procedure 45[1] subpoena requesting various internal documents possessed by third-party Citizens To Keep Pasadena Strong PAC (CKPS), a political action committee registered with the City of Pasadena. CKPS respectfully moves this Court to quash the subpoena based on First Amendment associational privilege.

## STANDARD OF REVIEW

A court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(iii); *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 124 (E.D. Va. 2009). In addition, Rule 45 provides that a court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iv). Further, Rule 26(c) authorizes a court, for good cause shown, to protect a person

---

[1] All subsequent references to enumerated 'Rules' will refer to the Federal Rules of Civil Procedure unless otherwise indicated.

from annoyance, embarrassment, oppression, or undue burden or expense. See Fed. R. Civ. P. 26(c); *Ferko v. National Ass'n for Stock Car Auto Racing, Inc*., 218 F.R.D. 125, 132 (E.D. Tex. 2003) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). Even if not privileged, the Court must balance the competing interests of allowing discovery and protecting the parties from undue burdens. *Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. TX 2002).

Whether a subpoena is reasonable is a fact question for the court. *Williams v. City of Dallas*, 178 F.R.D 103 (N.D. Tex. 1998). A facially overbroad subpoena is unduly burdensome. *Cmedia, LLC v. Lifekey Healthcare LLC*, 216 F.R.D. 387 (N.D. Tex. 2003) (holding request seeking "any evidence of communication" to be overbroad). Subpoenas requesting documents implicating First Amendment associational privilege must go beyond mere Rule 26 relevance. The party must show the information is "essential to their case." *City of Greenville v. Syngenta Crop Protection, Inc.* 2011 WL 5118601 at *6 (C.D. IL 2011) citing *United States v. Citizens State Bank*, 612 F.2d 1091, 1094 (8th Cir.1980). And must be so relevant that it "goes to the heart of the matter." *In re Heartland*, 2011 WL 1839482, at * 3 (N.D. IL 2011).

### The Information the Requestors Seek

The Subpoena's thirteen requests run the gamut of every possible internal and external CKPS communication over a 16-month period from January 1, 2013 to May 1, 2014 and other communications extending as far as May 30, 2015. (See Exhibit "A"). For example the first request states:

> Please produce: all draft and final documents that relate to all communications between CKPS and persons who resided and were registered to vote in Pasadena; that reference any candidate being voted on in the May 2013 Pasadena City Council and Mayoral elections and that were sent or received between January 1, 2013 and May 1, 2014.

The other dozen requests are no less broad, demanding similarly wide-ranging information regarding CKPS's drafts, internal communications and notes, internal campaign strategy, financial records etc.

Plaintiffs presumably request this material to demonstrate one or more of their constitutional and statutory racial-discrimination claims against the City of Pasadena Defendants. (Compl. Para. 53-58). See *Hall vs. Louisiana*, 2014 Slip Copy 2014 WL 1652791 at *2 ("To prove racial discrimination in violation of the Fourteenth Amendment's Equal Protection Clause and the Fifteenth Amendment's right to vote, a plaintiff must prove the government acted with discriminatory intent . . . Unlike the Fourteenth and Fifteenth Amendments, proof of discriminatory intent is sufficient, but not necessary, to sustain a claim under the Voting Rights Act. Instead, a Voting Rights Act plaintiff may carry his or her burden by either satisfying the more restrictive intent test or the more lenient results test. See *Thornburg v. Gingles*, 478 U.S. 30, 43–44 (1986)"). CKPS has received funding from Mayor of Pasadena Johnny Isbell's campaign funds.

## Argument

I. **All nonpublic documents the subpoena seeks are protected by First Amendment associational privilege.**

A political action committee is an organization of people that associate to advance ideas and achieve political objectives. The right of political association is a fundamental right under the First Amendment. *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). See also *Kusper v. Pontikes*, 414 U.S. 51, 56–57 (1973) ("freedom to associate with others for the common advancement of political beliefs and ideas is . . . protected by the First and Fourteenth Amendments."). Federal courts recognize a First Amendment associational privilege, which protects nonpublic communications from discovery by legal adversaries. *Greenville v. Syngenta*

3

*Crop Prot., Inc*., 11–MC–10, 2011 WL 5118601, at * 6 (C.D. IL 2011) (citing *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162-63 (9th Cir. 2010)).

There is no question participation in political campaigns is a protected activity. See *San Francisco County Democratic Cent. Comm. v. Eu,* 826 F.2d 814, 827 (9th Cir.1987), and that compelled disclosure of sensitive information can deter such participation. *Buckley v. Valeo*, 424 U.S. 1, 68 (1976). Further, internal communications hold value by facilitating public speech vital to self-government and to assure "unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957) quoted in *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). These protections embody, as one commentator described, the Constitution's "most majestic guarantee."[2]

While not absolute, the seeker of privileged documents bears a heavy burden particularly if seeking documents from groups engaged in controversial or highly charged political issues. The possible chilling effect exposure of internal communications would garner enables their vigorous protection. *Perry*, 591 F.3d at 1160.

### II. Piercing the Associational Privilege requires a burden-shifting analysis with a heavy burden on the party seeking to overcome the privilege.

A party seeking to pierce this constitutional protection must hurdle a high bar. For associational privilege, Fifth Circuit courts adopt the burden-shifting analysis articulated in *Perry v Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). First, the party resisting discovery must make a *prima facie* showing that the privilege applies by demonstrating "compelled disclosure will chill associational rights, *i.e.* that disclosure will deter membership due to fears of threats, harassment or reprisal from either government officials or private parties which may affect

---

[2] Laurence Tribe, *American Constitutional Law*, Sec. 12-1, p. 785 (2nd ed. 1988).

members' physical well-being, political activities, or economic interests." *Beane v. Utility Trailer Manufacturing Co.* 2011 WL 2462895 at *1 (W.D. LA 2011). This burden must be "light." *New York State Nat. Organization for Women v. Terry,* 886 F.2d 1339, 1355 (2nd Cir. 1989) quoted in *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 376 (TX 1998), and need not be plead with "particularity." *Perry*, 591 F.3d at 1163.

Movants seeking to invoke associational privilege have met this burden by relating how public exposure of internal deliberations would affect the organization. They include an affidavit asserting that disclosure would cause the affiant to be "less willing to engage in such communications," *Perry*, 591 F.3d at 1163; an affidavit stating disclosure would frustrate the group's organizational decisions, how it conduct its affairs, selects its leaders, and promotes its messaging, *AFL-CIO v. Fed. Election Comm'n*, 333 F.3d 168, 177 (D.C.Cir.2003); and a letter stating a member would no longer attend meetings if communications are disclosed, *Dole v. Serv. Emps. Union, AFL-CIO, Local*, 280, 950 F.2d 1456, 1460 (9th Cir.1991) all quoted in *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470, 492-93 (Kelly, J., concurring) (10th Cir. 2011). One declaration in the preceding Tenth Circuit case stated, "I likely would have chosen not to speak or become involved in the political process had I known that my internal communications could be disclosed to the opponents in the public policy debate." Another stated "If I had known that my communications . . . could be subject to disclosure through discovery . . . . I would not have solicited or disseminated information to members as I did so freely here." *Id.* at 493.

Here CKPS will meet this light burden. Jeff Yates will state in a declaration that all drafts, financial statements, and other internal communications were presumed confidential, and that exposing this information would have a chilling effect on the operations of his organization

5

including possibly threatening its very existence. (See Exhibit "B").[3] Given the weighty First Amendment protections at stake, the burden must shift to the Plaintiffs to justify piercing this privilege. They cannot do so.

### III. Plaintiffs have no essential need for this information, it is unnecessary to prove their case, and they can receive information from more relevant, germane sources.

To begin Plaintiffs must show the information is "essential" to their case *and otherwise unavailable*. *Perry*, 591 F.3d at 1161; *Dunnet Bay Const. Co. v. Hannig*, 2011 WL 5417123 at *4 (C.D. IL 2011). Courts vary slightly on the criteria they balance for this analysis. *Perry* analyzed (i.) relevance (ii.) the importance of the litigation; (iii.) the centrality of the information sought to the issues in the case; (iv.) the existence of less intrusive means; and (v.) the substantiality of the First Amendment interests at stake. 591 F.3d at 1161 (internal citations omitted).[4]

Here the dispositive factor is relevance. This relevance standard is not the broad "reasonably calculated to lead to the discovery of admissible evidence," articulated in Rule 26. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004). That standard "fails to give sufficient weight to the First Amendment interests at stake." *Perry*, 591 F.3d at 1164. The more demanding associational privilege standard coalesces with courts' repeated insistence that

---

[3] CKPS was unable to file Mr. Yates' declaration at the time of this filing because the undersigned counsel is lead counsel in a trial in the Western District of Texas, Austin Division that began December 14. CKPS was unable to secure an agreement to limit the subpoena's broad language with Plaintiffs here, thus necessitating this motion. The undersigned is a solo practitioner and was not able to coordinate securing a signed version of Mr. Yates' declaration in time to file this motion. CKPS intends to file this declaration as soon as possible this week.

[4] In the Tenth Circuit, to determine whether plaintiffs have a compelling need, the Court considers the following factors: (1) the relevance of the information sought; (2) plaintiffs' need for the information; (3) whether the information is available from other sources; (4) the nature of the information sought. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1466–67 (10th Cir.1987) (internal citation omitted); one court in the Seventh Circuit analyzed three factors: (1) the relevance of the information sought, (2) the need for that information, and (3) the extent of injury that disclosure may cause to associational rights." The information must be so relevant that it "goes to the heart of the matter." *In re Heartland*, 2011 WL 1839482, at * 3 (N.D. IL 2011) (citations or quotations omitted).

the information be "essential" to prove their case and available nowhere else. *Id.* at 1161. In fact, the information must be so relevant it "goes to the heart of the matter." *In re Heartland*, 2011 WL 1839482, at * 3 (N.D. IL 2011).

The Plaintiffs' requests fail this relevance standard. CKPS's activities are political not legislative and they are conducted in the private sphere. CKPS is associated but independent of Mayor Johnny Isbell and plays no role in legislative affairs or governmental authority of the City of Pasadena. As a third party with regular contact with only one elected official internal or nonpublic CKPS communication cannot be essential to proving any aspect of the Plaintiffs' case including discriminatory intent.

All essential material to prove their case will come from the legislator's themselves or the City as a corporate body. See *One Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 752 (2012) ("[T]he views of a single legislator, even a bill's sponsor, are not controlling."). *United States v. O'Brien*, 391 U.S. 367, 383–384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork"); see also *Palmer v. Thompson,* 403 U.S. 217, 224 (1971) ("no case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it"); and *Edwards v. Aguillard*, 482 U.S. 578, 638 (1987) (calling the evaluation of "the subjective intent of legislators ... a perilous enterprise"). This does not mean Voting Rights Act plaintiffs are barred from producing evidence of legislative purpose to demonstrate discriminatory intent. See *Washington v. Davis*, 426 U.S. 229, 270 n.11 (1976). It does, however, mean the "essential" evidence of that purpose—to the extent it may be gleaned and can overcome legislative privilege—lies with the governmental body and its officials, not third-party political organizations.

Here the connection to legislative purpose is even more tenuous because neither the mayor nor the city council *actually enacted* the challenged legislation. The voters themselves acting as a legislative body, through ballot initiative, are the relevant corporate legislative body. CKPS has turned over all information it publicly disseminated to advocate its position on the ballot measure. To the extent CKPS possesses any information to determinative of the public's corporate intent, the plaintiffs already have it. See *Perry*, 591 F.3d 1164-1165("Proponents have already agreed to produce all communications actually disseminated to voters, including 'communications targeted to discrete voter groups.' Whether campaign messages were designed to appeal to voters' animosity toward gays and lesbians is a question that appears to be susceptible to expert testimony, without intruding into private aspects of the campaign.").

In fact, virtually this same scenario played out in the Southern District's Corpus Christi Division last year in the *Veasey v. Perry*, 2014 WL 1340077 (S.D. TX 2014) and related litigation that ended in *Veasey v. Abbott*, 796 F.3d 487 (5th Cir. 2015). Southern District court judge Nelva Gonzales Ramos held a hearing on the Department of Justice's request to receive internal campaign materials and documents from non-party legislators:

**MR. D'ANDREA[5]:**   Your Honor, the campaign stuff is personal business, and they're forbidden by state law to even mingle this with their official state business. And we would have to go through an entirely separate channel to even get to stuff like that. And it -- I don't see it's relevant to this. And to the extent that they have this sort of stuff that goes out in public and they get -- they have access to it from other sources, right, which is the second element. Is there another way to get this? Well, yes. You can go to newspapers, you have stuff online (indiscernible) internet still available. I don't see why they have to go through the campaign offices to get it.

**THE COURT:**   Yeah.

---

[5] Arthur D'Andrea Assistant Texas Attorney General representing nonparty legislators.

**MR. FREEMAN[6]:**   Your Honor, there may be internal campaign communications, there may be mailings that were only sent to particular voters that are not publically available. There are all sorts of materials that are not available to the United States with regard to campaign communication that may explain, you know, to a legislator's particular constituency why that legislator supported SB 14. And in the world of targeted communication, we may see a very different message marched in front of some voters than one a legislator (indiscernible) more broadly to the public.

Civil Motion Hearing Transcript, *Veasey v. Perry* CASE NO: 2:13-CV-00193, (May 1, 2014) at 32-33.

Judge Ramos ruled the campaign material was irrelevant after further briefing by the parties. The State of Texas' Attorney General's office argued *Perry v. Schwarzenegger*, protected the non-party legislators internal campaign materials. (See Exhibit "C"). If campaign material by legislators who actually voted for a law attacked as unconstitutional and violative of the Voting Rights Act was not relevant, then material by an independent PAC advocating political positions also cannot be.

The lack of relevance buoys CKPS's arguments as to the other factors considered by *Perry*. As noted above, the information sought by a third-party political organization cannot be central (factor 3) to a case alleging constitutional and statutory infirmities by a government entity. They are by definition tangential to that determination. The existence of less intrusive means of attaining evidence (factor 4) is again demonstrated through the availability of evidence of the alleged violators themselves. And while the plaintiffs' case may have public importance, (factor 2) it is no less important than allowing political debate to flourish through time-honored First Amendment protected means (factor 5).

In fact the constitutional rights at stake could not be higher. Political participation free of harassment and fear of government oversight is at the core of American democracy. "[T]he right

---

[6] Dan Freeman, Department of Justice, representing the United States.

of association is a 'basic constitutional freedom,' that is 'closely allied to freedom of speech and a right which, like free speech . . . **lies at the foundation of a free society.**'" *Buckley*, 424 U.S. at 25 (internal citations omitted) (emphasis added). This right is threatened by invasive probing into the inner workings of a political organization that found itself on the opposite side of plaintiffs on a contentious public issue.  As one motion in the *Veasy* litigation stated, "Federal courts should refuse to allow the losing party in a political battle to use civil discovery to spy on their political opponents."

Finally if this court does not completely quash these subpoenas it should severely limit their scope. The Court should demand careful tailoring to alleviate concern over "unnecessary interference with protected activities." *Perry*, 591 F.3d at 1161. The broad language utilized in requests render them per se invalid. *Cmedia, LLC v. Lifekey Healthcare LLC*, 216 F.R.D. 387 (N.D. Tex. 2003).

## Conclusion

For the following reasons CKPS respectfully requests this court GRANT the above motion to quash this Rule 45 subpoena.

                                      Respectfully submitted,

                                      /s/ Jerad Najvar
                                      Jerad Wayne Najvar
                                      Texas Bar No. 24068079
                                      NAJVAR LAW FIRM
                                      4151 Southwest Fwy., Suite 625
                                      Houston, TX 77027
                                      281.404.4696 phone
                                      281.582.4138 fax
                                      jerad@najvarlaw.com
                                      *Lead Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing has been served upon all counsel of record by means of the court's CM/ECF system on December 14, 2015 as shown.

_____
Jerad Najvar