# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, JANE HAMILTON, SERGIO DELEON, FLOYD J. CARRIER, ANNA BURNS, MICHAEL MONTEZ, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS, JOHN MELLOR-CRUMLEY, PEGGY HERMAN, EVELYN BRICKNER, GORDON BENJAMIN, KEN GANDY, LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), AND DALLAS COUNTY, TEXAS, | ) ) ) ) ) ) ) ) ) ) ) |
|     *Plaintiffs,* | ) |
| v. | ) |
| | ) |
| RICK PERRY, Governor of Texas; and JOHN STEEN, Texas Secretary of State, | ) ) |
|     *Defendants.* | ) |

CIVIL ACTION NO.
2:13-CV-193 (NGR)
[Lead case]

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|     *Plaintiffs,* | ) |
| | ) |
| TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, IMANI CLARK, AURICA WASHINGTON, CRYSTAL OWENS, AND MICHELLE BESSIAKE, | ) ) ) ) |
|     *Plaintiff-Intervenors,* | ) |
| | ) |
| TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, HIDALGO COUNTY, AND MARIA LONGORIA BENAVIDES, | ) ) ) ) |
|     *Plaintiff-Intervenors,* | ) |
| v. | ) |
| | ) |
| STATE OF TEXAS, JOHN STEEN, in his official capacity as Texas Secretary of State; and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety, | ) ) ) ) ) |
|     *Defendants.* | ) |

CIVIL ACTION NO.
2:13-CV-263 (NGR)
[Consolidated case]

1

EXHIBIT C - MOT TO QUASH

_____

TEXAS STATE CONFERENCE OF NAACP
BRANCHES; and the MEXICAN
AMERICAN LEGISLATIVE CAUCUS OF
THE TEXAS HOUSE OF
REPRESENTATIVES,
       *Plaintiffs,*
v.

JOHN STEEN, in his official capacity as
Secretary of State of Texas; and STEVE
McCRAW, in his official capacity as Director
of the Texas Department of Public Safety,
       *Defendants.*
_____

BELINDA ORTIZ, LENARD TAYLOR,
EULALIO MENDEZ JR., LIONEL
ESTRADA; ESTELA GARCIA ESPINOSA,
ROXANNE HERNANDEZ, LYDIA LARA,
MARGARITO MARTINEZ LARA,
MAXIMINA MARTINEZ LARA, AND
*LA UNION DEL PUEBLO ENTERO, INC.*
       *Plaintiffs,*
v.

STATE OF TEXAS; JOHN STEEN, in his
Official capacity as Texas Secretary of State;
And STEVE McCRAW, in his official capacity
As Director of the Texas Department of
Public Safety,
       *Defendants.*
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.
2:13-CV-291 (NGR)
[Consolidated case]

CIVIL ACTION NO.
2:13-CV-348 (NGR)
[Consolidated case]

**SUPPLEMENTAL BRIEF CONCERNING THE MOTION TO QUASH
SUBPOENAS REQUESTING CAMPAIGN COMMUNICATIONS FROM
CURRENT AND FORMER LEGISLATORS**

EXHIBIT C - MOT TO QUASH

I.   **CAMPAIGN COMMUNICATIONS, SUCH AS MAILINGS, ADS, WEBSITES, FLYERS, AND CORRESPONDENCE, ARE ALL IRRELEVANT AND, IN ANY EVENT, PUBLICALLY AVAILABLE DOCUMENTS THAT PLAINTIFFS CAN EASILY OBTAIN WITHOUT SUBPOENAING LEGISLATORS.**

DOJ's subpoena demands that each legislator produce "[a]ll documents related to campaign communications, including but not limited to mailings, ads, websites, flyers, and correspondence, related to voter identification requirements or SB 14, made by or on behalf of any candidate for office in the State of Texas from January 1, 2005 to the present." Subpoena at ¶ 15. The Court should quash this paragraph of the subpoena because it demands documents that (1) are irrelevant to plaintiffs' claims in this case and (2) are publically available elsewhere.

A political campaign's communications are made in the candidate's personal capacity and have no relevance in a lawsuit challenging her official acts, or more specific to this case, the purpose of the Legislature as a whole in enacting any particular piece of legislation. The business of a campaign office is not the official business of the Legislature, or even of the particular officeholder. Indeed, state law forbids candidates to comingle their campaign efforts with official state business. TEX. ELEC. CODE § 255.003. As courts have held time and time again, the thoughts and musings of an individual shed no light on the purpose of the Legislature as a whole. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 752 (2012) ("[T]he views of a single legislator, even a bill's sponsor, are not controlling."); *Palmer v. Thompson*, 403 U.S. 217, 224 (1971) ("[N]o case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it."); *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1552 (8th Cir. 1996)

EXHIBIT C - MOT TO QUASH

("[A]n isolated statement by an individual legislator is not a sufficient basis from which to infer the intent of that entire legislative body."); *Stahm v. Klein*, 179 Cal. App. 2d 512, 518 (Dist. Ct. App. 1960) ("Any attempt . . . by the judiciary to define the personal thoughts of the legislator in voting for the passage of a law involves such delicate and frustrating problems that it has always been frowned upon."). That principle is all the more true when the thoughts or musings are not made in the legislator's official capacity.

In the months before SB 14's passage, voter ID laws enjoyed overwhelming popularity among voters of all races.  Indeed, a poll conducted by the University of Texas and the Texas Tribune revealed that 75 percent of Texas voters (including 63 percent of black respondents and 68 percent of Hispanic respondents) agreed that voters should be required to present a government-issued photo ID to vote. *See* University of Texas / Texas Tribune, Texas Statewide Survey (Feb. 11-17, 2011), at http://s3.amazonaws.com/static.texastribune.org/media/documents/uttt-SummaryDoc-day3.pdf.  That some members of the legislature campaigned on this issue is unremarkable and irrelevant.

This paragraph of the subpoena should also be quashed because it imposes an undue burden on legislators, some of whom are retired, to dig up campaign documents that are already publically available elsewhere.  Radio and television ads, for example, are easily accessible from the news outlet itself.  And internet websites are preserved forever online.   It is unduly burdensome to ask legislators

4

EXHIBIT C - MOT TO QUASH

to track down campaign materials that DOJ and its allies could just as easily obtain from a Google search or an inquiry to the media.

## II. INTERNAL CAMPAIGN COMMUNICATIONS ARE PROTECTED BY THE FIRST AMENDMENT.

At the hearing last Thursday, DOJ said for the first time that it also was seeking *internal* campaign communications. That is not what the subpoena says. *See* Subpoena at ¶ 15 (requesting "[a]ll documents related to campaign communications, including but not limited to mailings, ads, websites, flyers, and correspondence, related to voter identification requirements or SB 14, made by or on behalf of any candidate for office in the State of Texas from January 1, 2005 to the present."). We have always understood this language to request only *external* campaign communications. Our reading of the subpoena is supported by (1) the plain-text reading of the discovery request; (2) the interpretive canon *noscitur a sociis*, *i.e.*, the understanding that "internal campaign communications" are not included among "mailings, ads, websites, flyers, and correspondence"; and (3) the subpoena's qualification that the campaign communication be "made by or on behalf of any candidate for office," which again points to external communications only.

But at the Thursday hearing, DOJ proposed for the first time that it also wanted internal campaign communications. It was this extraordinary proposition that led the third-party legislators to request this opportunity for further briefing.

Campaign communications are shielded from civil discovery by the First Amendment. The First Amendment protects the private thoughts and

EXHIBIT C - MOT TO QUASH

communications of people who associate during a political campaign to achieve some political end, such as the election of a candidate, the enactment of a constitutional amendment, or the success of a ballot measure.  Indeed, the Ninth Circuit recently issued a writ of mandamus to a federal district court that had ordered discovery of internal campaign communications, instructing that "[a] political campaign's communications and activities 'encompass a vastly wider range of sensitive material' protected by the First Amendment than would be true in the normal discovery context."  *Perry v. Schwarzenegger*, 591 F.3d 1126, 1138 (9th Cir. 2009).  If a Legislator's internal campaign communications are discoverable, then so are the internal political communications of organizations like the NAACP, MALC, and the ACLU, an intolerable state of affairs under the First Amendment:

> The district court applied an unduly narrow conception of First Amendment privilege. Under that interpretation, associations that support or oppose initiatives face the risk that they will be compelled to disclose their internal campaign communications in civil discovery. This risk applies not only to the official proponents of initiatives and referendums, but also to the myriad social, economic, religious and political organizations that publicly support or oppose ballot measures.

*See id.* at 1137; *see also In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470, 481 (10th Cir. 2011) ("[T]he First Amendment privilege applies to the district court's discovery order, which requires trade groups and their members to disclose to a private party their communications regarding strategy for lobbying against the implementation of ATC in the United States.").

EXHIBIT C - MOT TO QUASH

The reason that the First Amendment protects campaign communications should be apparent from *Perry v. Schwarzenegger* and this case. In civil litigation of this nature, the parties across from each other in the caption are usually the very same parties who hashed it out in the political arena. Federal courts should not allow the losing side to use civil discovery to effectively wiretap the campaign offices of their political opponents. For example, one of the parties in this case is Mexican-American Legislative Caucus (MALC), which is comprised of over 40 Texas legislators and chaired by Trey Martinez Fischer, one of the most outspoken critics of SB 14 in the House. Another party is Congressman Marc Veasey, who was chair of the House Democratic Caucus when SB 14 passed. The third-party legislators' First Amendment interest in shielding their internal campaign deliberations from the parties and lawyers in this case could not be stronger.

Dated: May 5, 2014

Respectfully submitted.

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JONATHAN F. MITCHELL
Solicitor General

*/s/ Arthur C. D'Andrea*
ARTHUR C. D'ANDREA
Assistant Solicitor General

EXHIBIT C - MOT TO QUASH

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 475-0131

COUNSEL FOR THE THIRD-PARTY
LEGISLATORS

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2014, I served a copy of this document via the Court's electronic filing system to all counsel of record.

*/s/ Arthur C. D'Andrea*
ARTHUR C. D'ANDREA

8

EXHIBIT C - MOT TO QUASH