UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALBERTO PATINO ET AL<br>      Plaintiff,<br><br>v.<br><br>CITY OF PASADENA, TEXAS ET AL<br>      Defendant. | Civil Case No. 4:14-cv-03241 |

## VERIFICATION OF JEFF YATES

I, Jeff Yates, declare as follows:

1. I am self-employed as a professional campaign consultant, with my business known as The Yates Company. My principal place of business is 2714 Briar View Dr., Pearland, TX 77581.

2. My former and current clients include candidates running for various City of Houston, Harris County, and other municipal and local offices, including judicial offices, as well as political groups active in such races.

3. I previously served as the Executive Director of the Harris County Republican Party for approximately six years.

4. My role with CKPS was and is to serve as a general political consultant, providing my professional advice as to how the client may best seek the desired political result, including advice as to messaging, strategy and tactics. I also serve as essentially a general contractor; I communicate with the CKPS principal(s) and then hire other vendors to provide specific services, such as mail production/distribution, phone banking, distribution of doorhangers, etc.

5. My conversations with Johnny Isbell regarding CKPS activity were usually on the phone and on rare occasions in person. I do not recall maintaining any written notes from any such meetings. Further, I have never seen Johnny Isbell write a note from one of our meetings and am not aware that he keeps any notes.

MOT. TO QUASH - EX. B

6. CKPS had no activity whatsoever in relation to the November 2013 special election in the City of Pasadena.

7. Because of my experience in politics, I have personal knowledge of the manner in which political consultants and candidates interact and the absolute necessity of confidentiality of communications about political strategy, plans, etc. in the context of political campaigns, whether for a candidate's election or for an issue on the ballot.

8. I can unequivocally state that if the personal and private communications about political affairs are exposed they will have a severe chilling effect not only on myself but also on CKPS. Political campaigns are contentious endeavors where the ability to communicate and strategize privately is paramount.

9. If draft versions of communications debated within CKPS, or more generally, political and strategic communications within the organization are ordered to be disclosed through discovery in this matter, it will drastically alter how I communicate in the future.

10. Disclosing private political conversations I have both within and outside the organization will in fact threaten the continued existence of this organization. Every private political conversation I have is presumed to be just that. Had I known my thoughts and the thoughts of others I conversed with both within and outside the organization would be subject to discovery I would not have spoken so candidly.

11. Drafts of work product documents including but not limited to public campaigns are at the heart of CKPS's operations. These deliberations are always presumed private and making them public would severely curtail our ability to communicate effectively with the public. It would additionally serve as a boon to CKPS' political opponents, who would be permitted access to internal deliberations providing insight into confidential political strategy.

12. In some of the requests in the subpoena, the Plaintiffs ask for "documents showing the dates on which the communication was made to the recipients, documents identifying the recipients of the communication, and documents showing the location where the communication was received." The objections stated above as to revealing internal strategy, etc. apply to these requests as noted in CKPS' responses and objections to the subpoena. But I wanted to add some additional information as to these requests.

13. Regarding the recipients of the communications:

    a. For direct mail, the vendors we work with (in this case Spencer Neumann) pulls a list of recipients based on parameters we within the PAC have agreed on and based on the budget, and then he pulls that list from a larger voter database and provides it to the mailhouse/printer for distribution. So CKPS does not have possession or control of the actual list.

    b. For automated phone calls (which are relevant only to CKPS activity in 2015), I have possession of phone lists from 2015. I would have to search my files to find them and verify which ones I have.

    c. For hand-delivered material such as doorhangers and push cards (which are relevant only to CKPS activity in 2015), I also believe that I have possession of walk lists from 2015. I would have to search my files to find them and verify which ones I have.

14. Regarding the dates communications were sent:

    a. For direct mail, the only way to be sure of the exact date a piece was mailed (entered into the mail system) would be for the sender to make a specific request from the United States Postal Service for a "form 3602." I would be happy to do that if it is necessary for the Plaintiffs and I will work with them if they so desire. However, there is no document in my possession reflecting the exact date any piece was mailed. Beyond the dates provided in the campaign finance reports, I could attempt to piece together dates based on my email communications. I would be happy to prepare a list of the dates the several mail pieces were sent out, but I do not wish to hand over the internal communications themselves, as noted above.

    b. For phone calls and block walking (which are relevant only to CKPS activity in 2015), I would have to glean the relevant dates from reviewing my email communications.

15. Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

If called upon to testify I would testify competently as to matters stated herein. Executed on February 4, 2016 in Harris County, Texas.

_____
Jeff Yates

DATE: 2-4-16