UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALBERTO PATINO, et al., § | |
|     *Plaintiffs*, § | |
| § | |
| vs. § | Civil Action No. 4:14-CV-03241-LHR |
| § | |
| CITY OF PASADENA, § | |
|     *Defendant*. § | |

## DEFENDANT CITY OF PASADENA'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO AND MOTION TO STRIKE DEFENDANT'S SUMMARY JUDGMENT EVIDENCE

OF COUNSEL:

GUNNAR P. SEAQUIST
Texas State Bar No: 24043358
Southern District No: 1140733
*gseaquist@bickerstaff.com*
BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 S. MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
Telephone: (512) 472-8021
Facsimile: (512) 320-5638

KELLY SANDILL
State Bar No. 24033094
Southern District No. 38594
*ksandill@andrewskurth.com*
KATHRYN K. AHLRICH
State Bar No. 24063686
Southern District No. 1242003
*katieahlrich@andrewskurth.com*
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone:  (713) 220-4181
Facsimile:  (713) 238-7304

By:   */s/ C. Robert Heath*
     C. ROBERT HEATH
     Texas State Bar No. 09347500
     Southern District No. 13381
     *bheath@bickerstaff.com*
     BICKERSTAFF HEATH
     DELGADO ACOSTA LLP
     3711 S. MoPac Expressway
     Building One, Suite 300
     Austin, Texas 78746
     Telephone: (512) 472-8021
     Facsimile: (512) 320-5638

**ATTORNEY-IN-CHARGE FOR DEFENDANTS**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ ii

Table of Authorities ........................................................................................................... iii

Nature and Stage of the Proceedings ................................................................................... 1

Statement of the Issues ........................................................................................................ 1

Summary of the Argument .................................................................................................. 1

I.   The plaintiffs' objection is based on an alleged failure to identify Ms. McCall and the area of her knowledge under Rule 26(a)(1), but that information, in fact, was provided in the supplementation process as contemplated by Rule 26(e) ........................... 2

II.  Even if it were determined that the disclosure of Ms. McCall and the area of her knowledge in the deposition did not comply with the Rule, her declaration should not be excluded ................................................................................................................ 5

     A.   In the event it is determined that there was a failure to disclose, such failure did not result in prejudice to the plaintiffs ............................................................ 5

          1.   The plaintiffs were aware of Ms. McCall's existence and of the knowledge she might have regarding the case ............................................ 5

          2.   Ms. McCall's declaration does not constitute expert testimony ................ 7

          3.   Almost all of the data reported in Ms. McCall's declaration can be found in the summary judgment record from other sources, and most of that was placed in the record or was originally submitted among the papers in this case by the plaintiffs ........................................................ 9

Conclusion ........................................................................................................................ 11

Certificate of Service ........................................................................................................ 13

## TABLE OF AUTHORITIES
Page(s)

**Cases**

*Harris v. Amoco Production Co.*,
    768 F.2d 669 (5th Cir. 1985) ...................................................................................................1

*Kellogg Brown & Root Int'l v. Altanmia Commercial Marketing*,
    2008 WL 5114962 (S.D. Tex. 2008) ........................................................................................7

*Marcellino v. Federal Express Corp.*,
    2010 WL 4286379 (N.D. Ill. 2010) .........................................................................................5

*Reimer v. Center for Counseling and Health Resources*,
    2008 WL 2944900 (W.D. Wash. 2008) ...............................................................................5, 6

*In re Sambrano*,
    440 B.R. 702 (Bankr. W.D. Tex. 2010) ..................................................................................5

*Texas A & M Research Foundation v. Magna Transportation, Inc.*,
    338 F.3d 394 (5th Cir. 2003) ...................................................................................................5

**Statutes**

52 U.S.C. § 10301 ............................................................................................................................1

**Other Authorities**

8A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2049.1
    (3d ed. 2016) ............................................................................................................................4

FED. R. CIV. PROC. 26(a)(1) ................................................................................................ *passim*

FED. R. CIV. PROC. 37(c)(1) ...........................................................................................................5

**Nature and State of the Proceedings**

The Court has set an August 24 hearing on the City of Pasadena's motion for summary judgment in this case brought under section 2 of the Voting Rights Act, 52 U.S.C. § 10301. The plaintiffs filed an objection to one declaration (the McCall declaration[1]) filed with the motion for summary judgment and moved to strike that declaration. This is the city's response to that motion to strike.

**Statement of the Issues**

The issues in the case are:

1. Whether the city complied with its Rule 26(a)(1) duty to disclose persons with knowledge of relevant facts when the challenged declarant was initially identified by the plaintiffs in their initial disclosures and when both her identity and the scope of her knowledge were disclosed in the deposition of the city's expert; and

2. If it is determined that Rule 26 was not complied with, whether the declaration should be excluded even though the plaintiffs have been aware of the existence of the witness and the scope of her knowledge for at least six months.

These discovery issues are reviewed under an abuse of discretion standard. *Harris v. Amoco Production Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

**Summary of the Argument**

There was no failure to disclose Ms. McCall as someone with knowledge of relevant facts under Rule 26(a)(1). She was not identified in the city's initial disclosure (although she was identified in the plaintiffs' disclosures), but she was identified, along with the scope of her knowledge in the deposition of the city's demographic expert. As a general matter, under Rule

---

[1] The McCall declaration is found at Doc. 71-1 at 6-12.

1

26(e), a party is not required to supplement its discovery if the additional or corrective information has "otherwise been made known to the other parties during the discovery process or in writing[.]". Indeed, the Advisory Committee Note to the 1993 amendment of Rule 26(e) expressly provides that it is a sufficient supplemental disclosure when a witness not previously disclosed is identified during the taking of a deposition. Thus, there was no failure to disclose.

Even if it were determined that there was a failure to disclose, the declaration should not be stricken since there was no prejudice to the plaintiffs. The plaintiffs were aware of Ms. McCall and her relationship to the case, as evidenced by her inclusion in the plaintiffs' initial disclosures. Additionally, Ms. McCall's knowledge of the specific matters covered in her declaration was expressly revealed six months ago in a deposition taken by the plaintiffs. The contents of the declaration basically collect and organize public records from the Census Bureau and voter registration files. Most of the information contained in the declaration is already in the summary judgment record with most of it put there by the plaintiffs or contained in their expert's report. Accordingly, having it pulled together and summarized in the McCall declaration cannot be prejudicial to the plaintiffs.

I. **The plaintiffs' objection is based on an alleged failure to identify Ms. McCall and the area of her knowledge under Rule 26(a)(1), but that information, in fact, was provided in the supplementation process as contemplated by Rule 26(e).**

The plaintiffs' motion to exclude is based on the failure to list Sherry McCall, who filed a declaration in connection with the motion for summary judgment, as a person with knowledge of relevant facts. While it is true that the city did not list Ms. McCall in its Rule 26(a)(1) initial disclosures, her identity and the scope of her knowledge became known to the plaintiffs through, among other ways, the supplementation process as contemplated by Rule 26(e).

2

Ms. McCall's identity as someone who would have knowledge of discoverable information was known to the plaintiffs because *they* identified her in their Rule 26(a)(1) disclosures.[2] While admitting they were aware that Ms. McCall might have relevant knowledge, the plaintiffs assert that were unaware that Ms. McCall would conduct a district demographic overlap analysis using 2015 geocoded SSVR"[3] and were thus surprised. However, to the extent the plaintiffs suggest that they did not know that Ms. McCall would be geocoding Spanish-surname voters from the 2015 registration lists, they are incorrect. Dr. Rives' expert report, which was provided to the plaintiffs in December 2015, states that it was based, in part, on geocoded Spanish-surname registration data contained in Harris County's March 2015 registration lists.[4] Of course, those statements are in Dr. Rives' report and do not mention Ms. McCall; however, in his February 12, 2016, deposition the plaintiffs asked him:

> Q. (Ms. Perales)   . . . Did you do the geocoding for the March 2015 table here in your Exhibit 9?
>
> A. (Dr. Rives)   No, I don't have the software. The - - software setup is fairly expensive, and so, Sherry has access to all of that, plus the - - plus the records. And so we've decided to house everything in one place, and then, I work with her and she does the geocoding under - - under my instructions.
>
> Q.   Okay. And do you know whether Ms. McCall assigned these voters based on geocoding to a census block or a VTD?
>
> A.   We would have assigned it to a block. We wouldn't have used the VTDs there.[5]

A few pages earlier in the deposition, Ms. Perales asked if Dr. Rives had done the coding for Spanish surnames of the voters in the 2015 table, and Dr. Rives responded, "Sherry McCall

---

[2] Plaintiffs Objections to and Motion to Strike Defendant's Summary Judgment Evidence, ("Plaintiffs' Objections) Doc. 79, at 2, 5 and Exh. 2, Doc. 79-2 at 6, ¶ H.
[3] Plaintiffs' Objections, at 5.
[4] Rives Report, App. at 73, 96 (giving detailed explanation of data sources and methodology for geo-coding Spanish-surname registered voters). Citations to "App" are to the Appendix to Defendant City of Pasadena's Motion for Summary Judgment found at Docs. 71-1 through 71-3.
[5] Rives Deposition (February 12, 2016), p. 70, set out in Exhibit 1, *infra.*

3

actually did the coding under my instructions."[6] The deposition continued for the next four pages going over the background and mechanics of the process Ms. McCall used under Dr. Rives' instructions to determine if voters had Spanish surnames and then to assign those voters to a census block through the geocoding process.

Thus, for at least six months the plaintiffs have known that Ms. McCall had identified the voters with Spanish surnames and had geocoded them so it would be possible to determine the district in which they resided. They also examined the person directing her on the process she followed.

While one way to update the city's initial Rule 26(a)(1) disclosures would have been to serve a formal supplement to those responses, that is not the only way that disclosure can occur under the Rules. The Advisory Committee Notes to the 1993 Amendment to Rule 26(e) address the specific situation at issue here. The Notes state that "[t]here is no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, *as when a witness not previously disclosed is identified during the taking of a deposition.*"[7] Because the specific areas of knowledge for which the plaintiffs now claim surprise were specifically attributed to Ms. McCall in the deposition, the disclosure requirement of Rule 26 has been met, and there is no basis for the plaintiffs' objections.

---

[6] *Id.* at 66-67.
[7] FED. R. CIV. PROC. 26(e)(1)(a), Advisory Committee Notes, 1993 Amendment (emphasis added); *see also* 8A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2049.1 (3d ed. 2016) ("there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery").

**II.    Even if it were determined that the disclosure of Ms. McCall and the area of her knowledge in the deposition did not comply with the Rule, her declaration should not be excluded.**

If there were a failure to disclose a witness under Rule 26(a), the proffering party might not be allowed to use the witness at trial unless the failure is substantially justified or is harmless.[8] In evaluating whether the failure was harmless, the Court "weighs four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."[9]

Here, there was no failure to supplement the city's disclosures and, thus, no need to address the four factors. Nevertheless, if the Court determines that there was a failure to disclose, the four factors weigh heavily against excluding the evidence. Most important, there is a complete lack of prejudice to the plaintiffs in considering the evidence.[10]

**A. In the event it is determined that there was a failure to disclose, such failure did not result in prejudice to the plaintiffs.**

**1. The plaintiffs were aware of Ms. McCall's existence and of the knowledge she might have regarding the case.**

As the plaintiffs admit, *they* identified Ms. McCall as someone with knowledge of relevant facts.[11] The plaintiffs cannot be prejudiced by the defendant's failure to identify a potential witness whom the plaintiffs have themselves identified.[12] They downplay the importance of that identification by stating that they listed her "as someone with 'knowledge of facts concerning

---

[8] FED. R. CIV. PROC. 37(c)(1).
[9] *Texas A & M Research Foundation v. Magna Transportation, Inc.,* 338 F.3d 394, 402 (5th Cir. 2003).
[10] Because there is no prejudice to the plaintiffs, there is no need for a continuance, and the city does not suggest that one would be appropriate.
[11] Plaintiffs' Objections, Doc. 79, at 2, 5 and Exh. 2, Doc. 79-2 at 6, ¶ H.
[12] *See e.g,, Marcellino v. Federal Express Corp.,* 2010 WL 4286379, *4 (N.D. Ill. 2010); *Reimer v. Center for Counseling and Health Resources,* 2008 WL 2944900, *2 (W.D. Wash. 2008); *In re Sambrano,* 440 B.R. 702, 708 (Bankr. W.D. Tex. 2010).

5

Pasadena municipal election data and conducting certain elections for the City'"[13]—a subject unrelated to the contents of her declaration. Later in their brief, the plaintiffs reiterate that "[e]arly in the litigation Plaintiffs thought Ms. McCall might have knowledge of City election data (and thus included that information in Plaintiff's initial disclosures) but Plaintiffs never learned that Ms. McCall would conduct a district demographic overlap analysis using 2015 geocoded SSVR."[14] That statement, though, contains at least two factual errors, significantly understates the scope of the plaintiffs' knowledge regarding Ms. McCall, and tends to suggest the existence of prejudice when there is none.

    Contrary to the assertion on page 5 of their Objections, the plaintiffs did not characterize Ms. McCall's knowledge in their initial disclosures as relating to city election data. Rather, that was the description the plaintiffs gave to the knowledge possessed by persons in the Harris County Clerk's office who were named in paragraph G, which immediately preceded the paragraph referring to Ms. McCall.[15] They identified McCall as someone with "knowledge of facts concerning the drafting of Pasadena redistricting plans."[16] Facts concerning the drafting of the redistricting plans would include knowledge of the population, voting-age population, citizen-voting-age population, and registered voters in the districts of both the 2011 plan, which was the one used in the 2013 election, and the 2014 plan, which was used in 2015. Thus, the type of knowledge the plaintiffs actually described Ms. McCall as having is exactly the sort of information covered in her declaration. It is only by mistakenly assigning another individual's knowledge as set out in the plaintiffs' own disclosure of Ms. McCall as someone with knowledge of relevant facts that they argue that her declaration covered a different subject matter than they expected.

---

[13] Plaintiffs' Objections, at 2.
[14] *Id.,* at 5.
[15] Plaintiffs' Objections, Exh. 2 at 6, ¶ G.
[16] *Id.,* ¶ H.

6

Further, to the extent the plaintiffs complain of being unaware of her work with geocoding the Spanish-surname voters, the fact is that information was revealed to them when the plaintiffs took Dr. Rives' deposition. The plaintiffs were fully aware that Ms. McCall had knowledge of relevant information, and they knew from their specific deposition questions that she had performed the work they now claim to have had no knowledge of. Accordingly, they are not prejudiced by the introduction of the McCall declaration.[17]

### 2. Ms. McCall's declaration does not constitute expert testimony.

The motion to strike Sherry McCall's declaration is based largely on the assertion that it offers expert testimony. Arguably, non-disclosed expert testimony would be more prejudicial than non-disclosed factual testimony since the disclosure standards for expert testimony are higher. Specifically, the plaintiffs' motion argues the McCall declaration

> provides a mix of fact and opinion regarding the demographic characteristics of different City of Pasadena city council districts under different city council district systems. [Doc. 71-1] at 6-8. The declarant opines that, based on her analysis, "virtually all of the former District E is now found in District D" and that both "districts have a very similar demographic composition." *Id.* at ¶ 8.[18]

These two phrases from paragraph 8 of Ms. McCall's declaration are the only two statements the plaintiffs identify as constituting expert testimony.[19] Those statements, though, are not opinions but, instead, are statements of fact, and specifically, statements of facts set out in freely available public records.

---

[17] *Kellogg Brown & Root Int'l v. Altanmia Commercial Marketing,* 2008 WL 5114962, *15 n. 22 (S.D. Tex. 2008).
[18] Plaintiffs' Objections, Doc. 79, at 1-2.
[19] Interestingly, the plaintiffs did not identify the remaining sentence in the three-sentence paragraph 8 as an opinion. It noted that "[t]he former District E represents more than two-thirds of District D's population." Doc. 71-1 at 8, ¶ 8. Presumably, the plaintiffs do not consider that statement to be an opinion since 70.79—the percentage of District D's population that was previously in District E—is unquestionably more than two-thirds. Perhaps the plaintiffs' concern is with the less definite language of quantification such as "virtually all" and "very similar," If so, that objection is more properly to the vagueness of the written word when compared to numbers rather than to the distinction between fact and opinion.

The two statements the plaintiffs allege constitute expert opinions merely summarize earlier paragraphs in the declaration setting out Census Bureau and similar data for the 2011 District E and the 2014 District D. The reference to virtually all of the former District E's population now residing in the new District D is a summary of the declaration's paragraph 4 that says that 92.40 percent of District D's population was formerly in District E. No expert analysis or opinion is offered or required. Instead, it is simply a report of the count shown in the 2010 federal census. Similarly, the statement that the two districts have a very similar demographic composition summarizes the data from official sources set out in paragraphs 5 and 6 of the declaration. Those paragraphs reflected

|  | **2011 District E** | **2014 District D** |
|---|---|---|
| **Hispanic VAP[20]** | 57.20% | 59.08% |
| **Hispanic CVAP[21]** | 45.90% | 45.33% |
| **SSRV[22]** | 41.06% | 42.53% |

Stating that the two districts with the demographic percentages set out in this table have very similar demographic composition is not offering an expert opinion. It is merely stating the obvious. One does not need to be an expert to say that districts with 45.90 percent and 45.33 percent Hispanic-citizen-voting-age population are similar in their demographic composition.

Nor did the compilation of those numbers require expert analysis. To the contrary, all that Ms. McCall did was to extract and organize publicly reported government data. The data report the motion to strike is most concerned with and which also is the report that involves the greatest number of steps to prepare is the determination of the number of Spanish-surname voters in each

---

[20] Voting-age population.
[21] Citizen-voting-age population.
[22] Spanish-surname-registered voters.

district. To prepare this number the technician takes the official list of registered voters prepared by Harris County and compares the voter's name to a list of common Spanish surnames published by the Census Bureau. If the surname—*e.g.,* Gonzalez—is on the list, the voter is marked as having a Spanish surname, and the technician then checks the voter's address to see which district contains the voter's residence. The process is repeated for each registered voter, and, once the process is completed, the technician counts the Spanish-surnamed voters and the non-Spanish-surnamed voters in each district. It is basically a clerical task involving matching, locating an address on the map, and counting. While this description reflects the steps as they would be taken on paper, in fact, all the records are available in digital form and the matching, sorting, and counting are done by a computer. Still, though, it is no less than a simple function of gathering and organizing official records.

In paragraph 2 of her declaration, Ms. McCall states her belief "[t]hat all of the analysis presented in this declaration is a matter of formality and, I believe, uncontested." This is not a situation where the declaration presents expert analysis or an expert's opinion. Neither does it reveal new facts. Rather, it is simply a vehicle for organizing and presenting census and voter registration data from public records.

> **3. Almost all of the data reported in Ms. McCall's declaration can be found in the summary judgment record from other sources, and most of that was placed in the record or was originally submitted among the papers in this case by the plaintiffs.**

The plaintiffs cannot be prejudiced by the consideration of the McCall declaration because virtually all the information in the declaration can be found in other parts of the summary judgment record, although not in as organized or comprehensible a form. Ms. McCall's declaration essentially summarizes the data presented in its two exhibits. All the data contained in the eight-paragraph declaration is set out in the map found in Exhibit A and the tables located in Exhibit B.

9

With the exception of (1) the count of the population from the 2011 District E that remained in the 2014 District D, (2) the count of the March 2015 registered voters and Spanish-surname registered voters in the 2011 District E, and (3) the percentages derived from (1) and (2), every other piece of data found in the McCall declaration is found elsewhere in the summary judgment evidence and, in almost every case, can be found in evidence placed in the summary judgment record by the plaintiffs or in the plaintiffs' demographic expert's report.

This can be seen in exhibit 2 to this response brief, which sets out exhibits A and B to the McCall declaration and annotates the places in the summary judgment record where the identical data point can be found. There are two caveats to the statement that the identical information can be found elsewhere in the summary judgment record. First, the original Exhibit A to the McCall declaration shows the 2014 District D overlaid on the 2011 District E. The summary judgment record elsewhere includes maps of the two districts, although one is not superimposed on the other.[23] Thus, the data (*i.e.,* the maps of the two districts) is in the record. What the McCall declaration does is to put it in a more comprehensible form by producing both maps at the same scale and superimposing one over the other. The second caveat relates to some of the population and citizen-voting-age population numbers reported by Mr. Ely, the plaintiffs' demographic expert. Those numbers reported by Mr. Ely are, at times, slightly different than the ones shown in the Rives report and in the McCall declaration.[24] The differences come from a slightly different methodology that can magnify the rounding error. While the raw numbers may be slightly

---

[23] Plaintiffs' Memorandum of Law in Response to Defendant's Motion for Summary Judgment ("Plaintiffs' Response"), Exhibits 40 (Doc. 75-8, at 2) and 41 (Doc. 75-8, at 9).

[24] The differences, where they exist, generally involve no more than one or two persons out of a population of several thousand. The greatest difference occurs in the CVAP numbers where there is extensive rounding (The census bureau reports block-group-level CVAP numbers, which is what the parties use, rounded to the nearest five). Even so, the biggest difference between numbers reported by Mr. Ely and the corresponding numbers set out in the McCall declaration amounts to less than 1/10 of one percent in computing the district's Hispanic CVAP percentage.

different, the percentages, which are the ultimate numbers we are concerned with, are virtually identical and any minor difference is, according to Mr. Ely, non-substantive.[25]

The McCall declaration relates to the similarity of the 2011 District E to the 2014 District D. It is helpful in showing that Mr. Wheeler, who is Hispanic and the overwhelming candidate of Hispanic choice,[26] has twice been elected from what is largely the current District D. Even without that information, it is undisputed that he has been elected twice and that the first district is very similar in Hispanic voting-age population and Hispanic-citizen-voting-age population, but the record would not be as clear regarding the overlap of the original and current district and of the similarity in the Spanish-surname-registered-voter percentage.

Both the plaintiffs' cause of action and the city's motion for summary judgment relate to the current (*i.e.,* 2014) council district plan and not to the 2011 plan. Since the issue in the motion for summary judgment relates primarily to the viability of the current District D as a district in which Hispanics enjoy an effective electoral majority, it is helpful to know that the prior District E was a similar district that largely overlapped the current District D and that it, too, was effective in electing the Hispanic candidate of choice. Thus, the McCall declaration provides information that is supportive of, but not essential to, the motion for summary judgment.

The supportive, but not essential, level of importance minimizes the possibility of prejudice to the plaintiffs if the declaration is introduced.

## Conclusion

There was no failure to disclose Ms. McCall's identity and the scope of her knowledge, since the plaintiffs identified her in their Rule 26(a)(1) disclosures and the specific description of

---

[25] Exhibit 3, *infra* (Ely deposition, at 10-13).
[26] App. 118.

11

the scope of her knowledge that the plaintiffs claim is missing was revealed in a deposition taken six months ago.

Even if it were determined that the disclosure was inadequate, the McCall declaration should still be considered because (1) consideration does not result in prejudice to the plaintiffs, who were fully aware of Ms. McCall's knowledge of the subject of her declaration as well as putting much of the same information into the record themselves, (2) the city's actions were justified since they conformed to the interpretation of Rule 26 set out in the Advisory Committee Note, (3) no continuance is necessary or appropriate as there has been no prejudice, and (4) the information contained in the declaration is supportive of, but not essential to, the motion for summary judgment.

Accordingly, the plaintiffs' motion to strike the McCall declaration should be denied.

OF COUNSEL:

GUNNAR P. SEAQUIST
Texas State Bar No: 24043358
Southern District No: 1140733
*gseaquist@bickerstaff.com*
BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 S. MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
Telephone: (512) 472-8021
Facsimile: (512) 320-5638

KELLY SANDILL
State Bar No. 24033094
Southern District No. 38594
*ksandill@andrewskurth.com*
KATHRYN K. AHLRICH
State Bar No. 24063686
Southern District No. 1242003
*katieahlrich@andrewskurth.com*
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone:  (713) 220-3956
Facsimile:  (713) 238-7294

Respectfully submitted,

By:  */s/ C. Robert Heath*
　　　C. ROBERT HEATH
　　　Texas State Bar No. 09347500
　　　Southern District No. 13381
　　　*bheath@bickerstaff.com*
　　　BICKERSTAFF HEATH
　　　DELGADO ACOSTA LLP
　　　3711 S. MoPac Expressway
　　　Building One, Suite 300
　　　Austin, Texas 78746
　　　Telephone: (512) 472-8021
　　　Facsimile: (512) 320-5638

**ATTORNEY-IN-CHARGE FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

This is to certify that on August 18, 2016, a true and correct copy of the foregoing document was served on all counsel of record via the electronic case filing system of the United States District Court for the Southern District of Texas.

                               /s/ *C. Robert Heath*
                               C. Robert Heath