IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALBERTO PATINO, *et al.* § | |
| § | |
| Plaintiffs, § | |
| v. § | Civil Action No. 4:14-cv-03241-LHR |
| § | |
| CITY OF PASADENA § | |
| § | |
| Defendant. § | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
OBJECTIONS TO AND MOTION TO STRIKE
DEFENDANT'S SUMMARY JUDGMENT EVIDENCE**

Plaintiffs Alberto Patiño, et al. (hereinafter, "Plaintiffs), by and through their undersigned counsel, file this Reply in Support of Their Objections to and Motion to Strike Defendant's Summary Judgment Evidence, pursuant to Federal Rule of Civil Procedure 56(c)(2) and (c)(4). Defendant City of Pasadena (hereinafter, "the City") has failed to provide any legal basis for the admission of Sherry McCall's declaration. For that reason, Plaintiffs urge the Court to strike or exclude Sherry McCall's declaration found at [Dkt. 71-1] as well as any exhibits attached to it, and any other unsubstantiated facts contained therein.

**ARGUMENT**

In response to Plaintiffs' motion to strike Sherry McCall's declaration, the City suggests that its expert, Dr. Norfleet Rives, properly disclosed Ms. McCall as a witness. Dr. Rives testified in his deposition that Ms. McCall prepared data under his supervision that he used to analyze the City's overall demographics and the current 6-2 redistricting plan. This testimony did not inform Plaintiffs that Ms. McCall would conduct further analysis of Dr. Rives' dataset

and author an expert report on the overlap between districts in the City's 6-2 redistricting plan and the City's previous 8-0 redistricting plan.  For this reason, Dr. Rives' testimony could not constitute supplementation under FED.R.CIV.P. 26(e) or satisfy the disclosure requirements of FED.R.CIV.P. 26(a)(2)(B).  Because the City never informed Plaintiffs that Ms. McCall would provide expert witness testimony in the case, Ms. McCall's declaration should be stricken.

I. Dr. Rives' Discussion of Sherry McCall in his Deposition does not Excuse the City's Failure to Disclose Ms. McCall as a Witness

The City concedes that Ms. McCall "was not identified in the city's initial disclosure" and that the City also did not disclose her as an expert witness or produce a report by her before the Court's expert disclosure deadline of December 16, 2015.  *See* City Response Br. at 1, 7; *see also* Dkt. 40.  Instead, after the close of discovery, the City attached an expert report by Ms. McCall to its summary judgment motion on July 1, 2016.

The City argues that Dr. Rives' reference to Ms. McCall during his February 2016 deposition provided notice of her future testimony in the case.  *See* City Response Br. at 3-4. However, the deposition testimony neither disclosed her as a witness nor alerted Plaintiffs to the subject matter on which Ms. McCall would later testify.

a. Ms. McCall's declaration offers expert opinion regarding similarities and differences among the districts in the City's 6-2 redistricting plan and previous 8-0 redistricting plan

In her declaration, Ms. McCall described her qualifications at length, including that she is a "geographic information system specialist" and works "with computer systems that integrate data from the federal census and computerized maps."  *See* Decl. of McCall [Dkt. 71-1] at ¶ 2. Ms. McCall testified that in order to present the analysis in her declaration, she not only integrated data from the federal census and computerized maps but also performed the complex tasks of "allocate[ing] data furnished by the Census Bureau at the census-block-group level to

2

census blocks through use of ratios" and took "voter registration data . . . from the county voter registrar" and "geo-coded [it] by locating the address of the voters on an electronic map of the city." *See id.*

Ms. McCall testified further that she performed an analysis of the dataset that she prepared to make comparisons between the City's 8-0 redistricting plan (adopted in 2011) and its new 6-2 redistricting plan (adopted in 2014). This analysis is known in redistricting as a "plan overlap analysis."[1] Ms. McCall used her expertise in data management and analysis to evaluate the demographic and registered voter characteristics of the population in "2011 District E" and "2014 District D" in order to present the number of people whom she concluded lived in "2011 District E" and who now live in "2014 District D." *See* Decl. of McCall [Dkt. 71-1] at 2 and Ex. B. The analysis conducted by Ms. McCall requires expert skill and is far more complex than what a lay person is capable of performing.

      b. Dr. Rives' testimony foreclosed testimony by Ms. McCall on the differences between districts in the 8-0 and 6-2 redistricting plans

The expert report of Dr. Rives did not include the analysis and opinions offered by Ms. McCall in her declaration, and his deposition testimony did not raise the possibility of Ms. McCall offering such analysis. *See generally* Decl. of Rives [Dkt. 71-2]. In fact, Dr. Rives' testimony during his deposition specifically precluded the plan overlap analysis that Ms. McCall presented in her declaration.

Dr. Rives' expert report and deposition only addressed the demographic characteristics of the City of Pasadena and 6-2 redistricting plan adopted in 2014. *See* Decl. of rives [Dkt.71-1] at

---

[1] *See, e.g.,* Texas Legislative Council, Plan Overlap Population Analysis (Red-340), found at ftp://gis1.tlc.state.tx.us/PlanH358/Reports/PDF/PlanH358_RED340_PlanH358vsPlanH100.pdf.

8-10. Dr. Rives testified that Ms. McCall had prepared data, under his supervision, that he used to support his conclusions regarding the demographic characteristics of the City of Pasadena and 6-2 redistricting plan. Dr. Rives never testified that Ms. McCall prepared data about the 8-0 redistricting plan or compared districts in the 8-0 and 6-2 redistricting plans.

Furthermore, Dr. Rives stated unequivocally in his deposition that he had not analyzed the 8-0 redistricting plan and would offer no opinions about it. He further testified that he would offer no opinion regarding Latino voter registration in the districts in the 8-0 plan:

> Q. Thank you. Is it correct to say that you did not perform an analysis of the city's previous eight single-member district election plan?
> A. I did not. That's correct.
> Q. And so you don't offer an opinion on how many of those previous eight single-member districts were majority HCVAP or SSVR, correct?
> A. No, I don't -- I don't have an opinion. I wasn't asked to look at that.
> Q. Okay. And you don't have an opinion regarding how many of the districts in the eight single-member district plan offered Hispanic voters the opportunity to elect their candidate of choice, correct?
> A. I wasn't asked to look at that either.

*See* Excerpt of Deposition Transcript of Dr. Rives, Ex. 1 (12:5-12:25, Feb. 12, 2016). Based on this testimony, Plaintiffs reasonably understood that the City did not plan to introduce expert testimony describing the demographic characteristics of the districts in the 8-0 plan or comparing the districts in the 8-0 plan to the districts in the 6-2 plan.

Dr. Rives' report and deposition testimony had the opposite effect of proper disclosure of Sherry McCall's testimony. Instead of notifying Plaintiffs that he or another expert would provide a plan overlap analysis, Dr. Rives foreclosed that possibility.

  c. Plaintiffs were not aware through other means that Ms. McCall would offer her expert analysis

It is undisputed that the City failed to identify Ms. McCall in its initial disclosures or present an expert written report by Ms. McCall, as required by Rule 26(a)(2)(B). *See* City

4

Response Br. at 1, 7. The City never provided Plaintiffs with a complete statement of Ms. McCall's conclusions and their bases, the facts and data considered by Ms. McCall, exhibits that Ms. McCall would use, and information regarding Ms. McCall's background and compensation. *See* FED.R.CIV.P. 26(a)(2)(B). The deposition testimony and other parts of the record to which the City cites in its response do not amount to any such report. Neither Dr. Rives' report nor his deposition testimony describing Ms. McCall's preparation of data for his use come close to the report required by the Federal Rules of Civil Procedure.

The City also points to Plaintiffs' expert's deposition as proof that the City made the required disclosures regarding Ms. McCall. *See* City's Response Br. at 3-4. First, it goes without saying that *Plaintiffs'* expert's deposition cannot be considered disclosure of Ms. McCall's expert testimony by the City. Mr. Ely never testified about Ms. McCall's analysis because neither he nor the Plaintiffs saw it before the City moved for summary judgment.[2] Second, it is simply wrong to suggest that because Plaintiffs' expert David Ely performed his own demographic analysis of the City, Plaintiffs were or should have been on notice that the City would submit expert analysis by Ms. McCall performing a plan overlap analysis.

Similarly, Plaintiffs' initial disclosure of Ms. McCall as a person who "likely possesses knowledge of facts concerning the drafting of Pasadena redistricting plans"[3] does not demonstrate that Plaintiffs were on notice that the City would submit a district overlap analysis

---

[2] Similarly, Mr. Ely did not testify that the demographic estimates generated by Ms. McCall in her analysis contained "non-substantive" differences from his own analysis, as suggested by the City in its Response at 10-11. The portion of Mr. Ely's deposition quoted by the City referred to the differences in city-wide demographic estimates generated by him and Dr. Rives. See Dkt. 80-1 at 17-23.

[3] Plaintiffs acknowledge their erroneous quotation of their initial disclosures with regard to Ms. McCall. The City is correct that Plaintiffs' initial disclosures stated that Ms. McCall "likely possesses knowledge of facts concerning the drafting of Pasadena redistricting plans."

by Ms. McCall. Because Ms. McCall had consulted for the City's defense counsel in past unrelated cases, Plaintiffs listed her as a person with possible knowledge about the case. In his deposition, Dr. Rives confirmed that under his direction, Ms. McCall had prepared a dataset for him that he used to offer opinions about the City's 6-2 redistricting plan. None of this information suggested that Ms. McCall would herself testify an expert witness and present analysis and conclusions on matters Dr. Rives never examined.

> d. Ms. McCall is more than a custodian or presenter of publicly available data and is not a lay witness

Given the complete failure of the City to notify Plaintiffs of its intent to use Ms. McCall's expert testimony, the City resorts to a claim that because Plaintiffs knew that she had prepared a database for Dr. Rives, (City Response Br. at 2), and knew that Census data is publicly available, Plaintiffs should have known that the City would use Ms. McCall as an expert to support its summary judgment motion. The City's Response obfuscates the difference between general information being publicly available, including data from the U.S. Census and registered voter lists from Harris County, and notice that the City planned to introduce the complex district overlap analysis performed by Ms. McCall.

The City's use of Dr. Rives to perform demographic analysis, as well as Plaintiffs' use of Dave Ely for the same purpose, demonstrates that preparation and analysis of Census and election data in redistricting cases require special skills. *See* Decl. of Rives [71-2] at 76-79; *see also* Expert Report of David Ely [Dkt. 71-1] at 31-32. The demographic experts for each side employed different methodologies, as the City points out, to process, assign and evaluate the City-wide and district-specific characteristics at issue in the case. *See* City Br. at 10. The fact that expert witnesses Dr. Rives and David Ely analyzed Census and Harris County data does not open the door to the City introducing a new expert's analysis of Census and election data.

As described above, Ms. McCall performed a sophisticated analysis of district demographic data in both the 8-0 and 6-2 redistricting plans and offered expert conclusions about the degree of overlap between districts and the people living in those districts. For the first time in this case, Ms. McCall offered the opinion that the former District E and the current District D "have a very similar demographic composition" and that "virtually all of the former District E is now found in District D." Decl. of Sherry McCall at ¶ 8. The City concedes that "[t]he summary judgment record elsewhere includes maps of the two districts, although one is not superimposed on the other." City Response Br. at 10. It is exactly this analysis, overlaying one redistricting plan on top of another, assembling and analyzing the associated data and opining as to the extent of similarity between the districts, that Ms. McCall performed in her surprise expert report.

Based on manipulation of sophisticated GIS software, and the use of demographic techniques such as assigning CVAP from the Census block group to the block level and geocoding registered voters to their home addresses in the City's geography, then analyzing areas of overlap between districts in two different redistricting plans, Ms. McCall's district overlap analysis is more than casual observations of a lay witness and reaches far beyond the demographic analysis offered by Dr. Rives in his report. Dr. Rives said he would not testify on the demographics of the City's previous 8-0 plan, which undoubtedly would have required further use of the mapping software employed by Ms. McCall. For this reason, Ms. McCall's testimony cannot hide behind that of Dr. Rives because he testified he would not offer analysis or opinions about the City's 8-0 redistricting plan.

Because the City did not disclose that Ms. McCall might use Dr. Rives' dataset to perform her own demographic analysis separate from Dr. Rives, Plaintiffs were unaware that the

City planned to present Ms. McCall as an expert witness comparing the two plans. Whether or not she aided Dr. Rives in performing his analysis, the City was required to disclose Ms. McCall and her report as expert witness testimony on the subjects she addresses. *See Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613-4 (7th Cir. 2002) (explaining that an assistant to an expert must also testify if she offers judgments beyond expertise of the testifying expert). Because the City did not offer Ms. McCall as an expert witness, her testimony must be excluded.

II. The Deposition of Dr. Rives did not Fulfill the City's Disclosure Obligations under Rule 26(e) Even if Ms. McCall is not an Expert

Dr. Rives' discussion of Ms. McCall's work during his deposition did not constitute a disclosure under Rule 26(a) or (e). Dr. Rives testified that under his supervision Ms. McCall prepared data for his analysis of the City demographics and the 6-2 redistricting plan. He explained that he would provide no analysis of the 8-0 redistricting plan and never stated that Ms. McCall would further analyze his data or provide new opinions in the case, particularly on the 8-0 redistricting plan. The City's argument that Plaintiffs' awareness of Ms. McCall's "identity and the scope of her knowledge" (City Response Br. at 2), without more, meets the requirement of Rule 26 misreads the Rule.

The City incorrectly asserts that the Advisory Committee's Notes regarding the 1993 Amendment to Rule 26(e) excuses the City from having to supplement disclosures as long as the witness' name is mentioned in a deposition. *See* City Response Br. at 2. To interpret the portions of the Rule and the Notes as saying that a mention of a potential witness in a deposition satisfies Rule 26 supplementation requirements is to offer an "incomplete reading" of the Rule. *See Poitra v. Sch. Dist. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 666 (D. Colo. 2015)

8

(supplementation also requires party to provide the subjects of the discoverable information that the putative witness may provide) (internal quotations omitted).

  III.  Any Testimony Based on the Untimely Disclosed Geocoding Data is Inadmissible Regardless of Whether the Court Allows Ms. McCall's Testimony

The City never explains why it did not provide Ms. McCall's geocoded voter data to Plaintiffs, either at the time of Dr. Rives' report and deposition or when filing Ms. McCall's' declaration with the summary judgment motion. Plaintiffs were prejudiced by not receiving the geocoded data before August 3, 2016, three days after Plaintiffs filed their response to the City's motion for summary judgment. *See* Plfs' Mtn. to Strike [79-3], Ex. 3. These data are not present in the public record, and the Dr. Rives explained that Ms. McCall used "expensive" software to geocode the data. *See* Deposition of Rives at 70 [Ex. 1 to City's Response Br.]. Without the opportunity to analyze the geocoded data themselves, and examine Ms. McCall on her development and use of the data, Plaintiffs were denied a fair opportunity to respond to the City's argument regarding similarities between districts in the 8-0 and 6-2 redistricting plans.

  IV.  Plaintiffs are Prejudiced by the City's Failure to Disclose Ms. McCall

The court's expert disclosure deadline was December 16, 2016 and discovery ended on May 31, 2016 (Dkt. 66). The City did not disclose Ms. McCall's declaration until it moved for summary judgment on July 1, 2016. The City did not disclose Ms. McCall's geocoded database until August 3, 2016. As a result, Plaintiffs were unable to conduct any discovery regarding Ms. McCall's analysis and conclusions, including deposing Ms. McCall and conducting their own analysis of her geocoded data. The inability to question Ms. McCall about her methodology and conclusions, and conduct their own analysis of her data, has severely prejudiced Plaintiffs. *See Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (party

9

against whom evidence was offered was prejudiced because responding to report with party's own experts would disrupt trial date). This Court has recognized that a party's failure to disclose a person with knowledge of relevant facts, and that party's later attempt to rely on affidavit testimony, without having afforded the other side an opportunity to depose the witness before the end of the discovery period, "is not harmless." *See Dogan-Carr v. Saks Fifth Ave. Texas, LP*, No. CIV.A.H 05 1236, 2007 WL 646375, at *19 (S.D. Tex. Feb. 26, 2007). Here, where Ms. McCall provides expert analysis and opinion, the harm is even greater to Plaintiffs.

The City's response that Plaintiffs are not prejudiced because they knew of Ms. McCall's preparation of a database for Dr. Rives is unavailing. The City cannot now claim that Dr. Rives' testimony provided adequate notice that Ms. McCall would supplement his database, perform a completely new expert analysis, and provide expert conclusions based on that analysis.

## CONCLUSION

Because the City failed to comply with discovery rules regarding Ms. McCall's declaration, Plaintiffs respectfully request that the Court strike Ms. McCall's declaration from the City's summary judgment evidence.

DATED: August 22, 2016    Respectfully submitted,

    Nina Perales
    Attorney-in-charge
    Texas Bar No. 24005046
    SDTX Bar No. 21127
    Ernest Herrera
    Texas Bar No. 24094718
    SDTX Bar No. 2462211
    MEXICAN AMERICAN LEGAL DEFENSE AND
      EDUCATIONAL FUND
    110 Broadway, Suite 300

San Antonio, TX 78205
Tel: (210)224-5476
Fax: (210)224-5382

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 22nd day of August, 2016.

*/s/ Nina Perales*
Nina Perales