IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERTO PATINO, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-3241 |
| | § | |
| CITY OF PASADENA, | § | |
| | § | |
| Defendant. | § | |

**FINAL JUDGMENT AND ORDER OF INJUNCTION**

Following a bench trial, the court issued an opinion in this case. (Docket Entry No. 151). The court found that the City of Pasadena's change from an eight single-member district map and plan to a six single-member district and two at-large position map and plan for electing its City Council dilutes the votes of Latinos in Pasadena, in violation of § 2 of the Voting Rights Act. 52 U.S.C. § 10301. (Docket Entry No. 151 at 85). The court also found that the City of Pasadena intentionally diluted Latinos' votes, in violation of the Fourteenth Amendment to the United States Constitution. (Docket Entry No. 151 at 103).

The plaintiffs are entitled to a permanent injunction. Voting is a fundamental right. *Reynolds v. Sims*, 377 U.S. 533, 561–562 (1964). The vote dilution irreparably injures the plaintiffs' right to vote and to have an equal opportunity to participate in the political process. Remedies like monetary damages, or more limited injunction provisions, are inadequate to redress the injury and to prevent future harm. The balance of hardships between the plaintiffs and the defendant leads to the conclusion that this injunction is required, and that it would serve the public interest. *See Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F.App'x 259, 272 (5th Cir. 2014) (per curiam) (setting out the

1

standard for a permanent injunction) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Pasadena is facing an impending election under an election map and plan that violates § 2 of the Voting Rights Act and intentionally discriminates against the City's Latinos by diluting their votes. Candidate registration for the May 2017 City Council election runs from January 18, 2017 to February 17, 2017. Because the City's Charter requires a citywide vote for an amendment, there is no time for legislative action to cure the infirmities in the unconstitutional map and plan before the next election. That would be the earliest opportunity for Pasadena voters to approve a City Charter amendment.[1]

The court must balance the requirement to give as much force as possible to the legislature's legitimate intentions and process with the requirement to rectify the § 2 and the constitutional violations. *Veasey v. Abbott*, 830 F.3d 216, 269 (5th Cir. 2016) (en banc). The remedy that achieves

---

[1] The City suggests redrawing the 6–2 map or delaying the filing deadline for the May 2017 election. (Docket Entry No. 161). For the reasons explained in detail in the court's memorandum and opinion, redistricting is not appropriate to remedy the violations. (Docket Entry No. 151 at 103–06). The map proposed by the City's counsel on Friday, January 13, 2017, proposes redrawing the border of every voting district with no input or approval from the City Council or City electorate, and with no opportunity for the plaintiffs or the parties' experts to evaluate the maps and plans. (Docket Entry No. 161, Ex. 1). The City's proposed new map creates significant population disparities between districts. (Docket Entry No. 161, Ex. 2). In contrast, the City's previous eight single-member district plan received the considered approval of the City Council and City electorate; has been scrutinized by experts on both sides; and maintained proportionate population figures across districts, clearly satisfying a one-person-one-vote standard. The 8–0 map and plan was approved by the local legislature in 2011 and was used in the 2013 elections. Using this recent map and plan is far preferable to drawing a new map by court fiat.
The court also concludes that delaying the May 2017 election to allow for City Council input on the suggested remedy creates more costs than benefits. Redistricting is a time-intensive process. Delaying or shortening the amount of time that candidates have to raise support and votes in their districts—whose boundaries will be uncertain during the redistricting process—may exacerbate the voting dilution and suppression problems that the new map and plan are supposed to cure. And as the City noted in its trial briefing, the entire electorate of Pasadena is the official decisionmaker on amending the City Charter. (Docket Entry No. 148 ¶ 51). The better way to defer to the local legislature on Pasadena's voting system is to let the electorate express its preferences for City Council in the regularly scheduled May 2017 election.

these results and allows Pasadena and potential candidates time to prepare for the next election, while giving appropriate respect and deference to the legislative process, is to restore the previous eight single-member district map and plan the City used in its May 2013 elections.[2] *See Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) ("Among other requirements, a court-drawn plan should prefer single-member districts over multimember districts, absent persuasive justification to the contrary." (collecting cases)). The districts for that map were drawn in 2011, based on the most recent decennial census. The eight single-member district map and plan gave Latino voters an equal opportunity to elect their preferred candidates without guaranteeing success. That map and plan cure the violations. The City Council and the City electorate approved the map and plan within the last five years. Reverting to that map and plan respects and defers to this recent and considered judgment of the local legislature.

Under 52 U.S.C. § 10302(c), the court retains jurisdiction for six years to review before enforcement any change to the election map or plan that was in effect in Pasadena on December 1, 2013.[3] This period will end on June 30, 2023, after the 2023 biennial election results are finalized. A change to Pasadena's map or plan may be enforced without court review only if it has been submitted to the United States Attorney General and the Attorney General has not interposed an objection within 60 days ("preclearance"). The court orders this remedy for the City's intentional dilution of Pasadena Latino votes and the effect on the equal opportunity of Pasadena Latinos to

---

[2] The City notes that Pasadena changed its candidate residency requirements in November 2013. (Docket Entry No. 161 at 9). To clarify, the order below sets a benchmark date of December 1, 2013 to include the new residency requirements in the definition of the 2013 eight single-member district map and plan.

[3] The City requests that the court either limit the scope of preclearance to changes to the election map or else set a benchmark date against which any voting change under a broad definition of preclearance would be measured. (Docket Entry No. 161 at 9). To be clear, the court adopts the latter requirement.

participate in the political process.  Preclearance is particularly appropriate because the City seized on, and used, the absence of preclearance to avoid the statutory and constitutional limits on redistricting.  (Docket Entry No. 151 at 91–93).  The court has carefully reviewed the evidence on Pasadena's demographics and recent history of success in electing Latino or Latino-preferred candidates to conclude that six years is a sufficiently limited and tailored remedy in this case.[4]

The court orders that:

(1)   The City of Pasadena is permanently enjoined from conducting the May 2017 City Council election or any subsequent City Council elections under the six single-member district and two at-large position redistricting map and plan adopted in 2014.

(2)   The City of Pasadena must  conduct the May 2017 City Council elections using the eight single-member district map and plan in effect on December 1, 2013.

(3)   Under 52 U.S.C. § 10302(c), the court retains jurisdiction until June 30, 2023. During this period, no voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different from that in force or effect on December 1, 2013 may be enforced unless and until the court has found that the

---

[4] The plaintiffs request ten years of preclearance.  (Docket Entry No. 160 at 1).  The purpose of § 3(c) preclearance under the Voting Rights Act is to remedy voting rights violations, not to punish.  *See Allen v. City of Evergreen, Ala.*, Civil No. 13-107, Docket Entry No. 82 (S.D. Ala. Jan. 13, 2014).  The court finds that the plaintiffs' requested period extends too far.  The plaintiffs' theory of this case, which the court found credible and amply supported by reliable record evidence, is that Pasadena changed its map and plan in 2014 precisely because Pasadena Latinos were successfully mobilizing and recently electing more of their candidates of choice.  (Docket Entry No. 151 at 80).  Reversion to a nondilutive map and plan, while putting the City under preclearance for the next four election cycles sufficiently remedies the intentional dilution and ensures the City cannot immediately return to a map and plan that thwarts Latinos on the cusp of an electoral majority, without extending so far as to punish the City with excessive federal oversight.

The City, on the other hand, suggests that preclearance should not extend past June 30, 2021. (Docket Entry No. 161 at 8).  The court concludes that 2023, or four election cycles, is more appropriate. That period ensures that the City's redistricting to take account of the 2020 Census is submitted to preclearance if, as was the case with the 2010 Census, the City does not approve its redrawn maps until after the first election under the new decennial census.

qualification, prerequisite, standard, practice, or procedure does not have the purpose, and will not have the effect, of denying or abridging the right to vote on account of race or color or in contravention of the voting guarantees set forth in 52 U.S.C. § 10303(f)(2). The qualification, prerequisite, standard, practice, or procedure may be enforced only after the City of Pasadena has submitted it to the United States Attorney General for preclearance and the Attorney General has not objected within 60 days after the submission. Neither the court's finding nor the Attorney General's failure to object will bar a subsequent action to enjoin the implementation or enforcement of the qualification, prerequisite, standard, practice, or procedure.

No bond is required or imposed.

This is a final judgment. Each party is to bear its own costs.

SIGNED on January 16, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge