Case 4:14-cv-03241   Document 166   Filed in TXSD on 01/18/17   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
January 18, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERTO PATINO, *et al.*, | § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-14-3241 |
| CITY OF PASADENA, | § § | |
| Defendant. | § § | |

### MEMORANDUM AND ORDER DENYING STAY

The City of Pasadena is appealing the injunction issued on January 16, 2017 and wants this court to stay enforcement until the appellate court decides.[1] A stay would likely result in another City Council election held under the map and plan that the court found to violate the federal Voting Rights Act and the United States Constitution. Based on the record and the applicable law, this court denies the motion to stay. The reasons are explained below.

---

[1] This court has jurisdiction to stay its final judgment pending appeal under Rule 8 of the Federal Rules of Appellate Procedure and Rule 62 of the Federal Rules of Civil Procedure. *See* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2902 (3d ed. 2012) ("A party who prefers to appeal can file a notice of appeal and seek a stay pending appeal as provided in Rule 62(c) and (d) and in Appellate Rule 8(a) and (b). . . . [T]he trial court, under Rule 62(c), and the appellate court, under Rule 62(g), have ample power to make whatever order is appropriate in injunction cases . . . . [T]he court should not grant a stay in these cases as a matter of course but should consider carefully the harm that a stay might cause to the party who has obtained the judgment and balance this against the harm that denial of a stay would cause to the losing party."); *see also* FED. R. APP. P. 8(a)(1)(A) ("A party must ordinarily move first in the district court for the following relief: a stay of the judgment or order of a district court pending appeal[.]"); *N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters*, 2005 WL 926969, at *1 (S.D.N.Y. Apr. 19, 2005) ("When a notice of appeal is filed, jurisdiction over the matters being appealed normally transfers from the district court to the appeals court. An exception exists under the Federal Rules of Civil Procedure, however, that allows the district court to retain jurisdiction to issue an order to preserve the status quo pending appeal.").

I.  **Background**

This suit is one of the first involving redistricting done shortly after, and because, the Supreme Court decided *Shelby County, Alabama v. Holder*, 133 S.Ct. 2612, 2631 (2013), which removed the federal Department of Justice preclearance requirement under § 5 of the Voting Rights Act. After a bench trial, the court issued a long and detailed set of findings of fact and conclusions of law, making specific findings as to the credibility of the witnesses and the reliability of the expert testimony. (Docket Entry No. 151). The court found that the City of Pasadena's change from an eight single-member district (8–0) map and plan to a six single-member district and two at-large position (6–2) map and plan for electing its City Council dilutes the votes of Latinos in Pasadena, in violation of § 2 of the Voting Rights Act. 52 U.S.C. § 10301; (Docket Entry No. 151 at 85). The court also found that the City of Pasadena intentionally diluted Latinos' votes, in violation of the Fourteenth Amendment to the United States Constitution. (Docket Entry No. 151 at 103).

The court issued its final judgment on January 16, 2017, enjoining Pasadena from conducting its May 2017 City elections under the 6–2 map and plan and restoring the 8–0 map and plan used for the May 2013 City elections. (Docket Entry No. 162). Candidate registration for the May 2017 City Council election runs from January 18, 2017 to February 17, 2017. The City wants the court to stay its injunction order pending appeal so that Pasadena may continue to use the 6–2 map and plan in the upcoming election. (Docket Entry No. 164). Because of the imminent filing deadline, the City requests expedited consideration for its application to stay. (*Id*. at 14). The court denies the City's motion to stay.

II.  **The Legal Standard for a Motion to Stay Pending Appeal**

"'A stay is not a matter of right, even if irreparable injury might otherwise result.' It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of

showing that the circumstances justify an exercise of that discretion.'" *Ind. State Police Pension Trust v. Chrysler, LLC*, 556 U.S. 960, 961 (2009) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). "A stay is an 'intrusion into the ordinary processes of administration and judicial review . . . . The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of [final] orders . . . ." *Nken*, 556 U.S. at 427 (quoting *Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)).

A court decides whether to grant a stay pending appeal based on the following factors: "'(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1027 (2013) (quoting *Nken*, 556 U.S. at 434); *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F.App'x 389, 392 (5th Cir. 2013) (per curiam) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors of the . . . standard are the most critical." *Nken*, 556 U.S. at 434. The movant has the burden to satisfy the four factors. *See Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982).

The movant must make "'a strong showing that [it] is likely to succeed on the merits.'" *Moore*, 507 F.App'x at 392–93 (alteration in original) (quoting *Hilton*, 481 U.S. at 776). "[T]he movant need not always show a 'probability' of success on the merits." *Ruiz*, 650 F.2d at 565. "[I]nstead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.*; *see also Nken*, 556 U.S. at 434 (noting that the movant must show "[m]ore than a mere possibility of relief"); *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992)

3

("[P]resentation of a substantial case is only the threshold requirement. That threshold step alone is not sufficient. . . . [A] 'serious legal question' . . . [and] demonstrat[ing] a heavy weight of equity in favor of the stay [is also required].").

## III. Analysis

### A. Success on the Merits

The City argues it has a substantial case on the merits involving serious legal issues because this case raises significant questions of: (1) whether an election system can be found dilutive if minorities achieve proportional electoral success; (2) the relationship between citizen voting-age population and the ability to elect candidates of choice; (3) whether Pasadena is being impermissibly required to maximize a minority group's electoral opportunity; and (4) whether the court properly found discriminatory intent. (Docket Entry No. 164).

On the first issue, the City's argument is inconsistent with longstanding federal law holding that "minority candidates' success at the polls is not conclusive proof of minority voters' access to the political process." *Johnson v. De Grandy*, 512 U.S. 997, 1014 n.11 (1994) (quoting S. Rep. No. 97-417, at 29 n.115 (1982)). Citing no precedent or authority to support its position, the City argues that the successful election of four Latino-preferred candidates to City Council in 2015 is enough to defeat the § 2 claim. (Docket Entry No. 164 at 3–4). The City's position stands squarely against the Supreme Court's holding in *League of united Latin American Citizens v. Perry*, 548 U.S. 399, 438 (2006) (*LULAC*), that "[e]ven if [a challenged plan's] disproportionality were deemed insubstantial, that consideration would not overcome the other evidence of vote dilution [under § 2]." *Id*. The City's first contention does not involve a serious legal question.

Under the second and third issue—the role of citizen voting-age population in the calculation of minority-opportunity districts—the City argues that the court used "an essentially, if not purely,

4

demographic standard of determining dilution" because it found that the 6–2 plan eliminated a minority-opportunity district despite the success of four Latino-preferred candidates to the City Council in the 2015 election. (Docket Entry No. 164 at 5). The City also argues that "[b]y finding dilution based on a perceived denial of an opportunity to elect a Latino-preferred candidate to a fifth seat, the court is employing a maximization standard." (*Id*. at 6). While the City is correct that "'[f]ailure to maximize cannot be the measure of § 2,'" (*Id*. (quoting *De Grandy*, 512 U.S. at 1016–17)), that was not the basis of the court's ruling. Minority success at the polls is not conclusive proof of minority opportunity. *De Grandy*, 512 U.S. at 1014 n.11. The court found that the election of two Latino-preferred candidates in 2015 did not support the conclusion that those candidates' districts (District D (Wheeler) and Place G (Van Houte)) were Latino-opportunity districts. (Docket Entry No. 151 at 62–65, 69–75). To reach this conclusion, the court relied not only on the demographic reports on the Hispanic citizen voting-age population in each district, but also on evidence of the degree of racial polarization in Pasadena elections, the narrowness of Ms. Van Houte and Mr. Wheeler's 2015 victories, the evidence of racial appeals in Pasadena elections, the increased size of electoral districts under the new map and plan, the presence of dilutive mechanisms such as a place system and majority-vote requirement, and the disparity in resources to mobilize voters between minority and majority populations in Pasadena. (*Id*.). "Where multimember districting generally works to dilute the minority vote, it cannot be defended on the ground that it sporadically and serendipitously benefits minority voters." *Thornburg v. Gingles*, 478 U.S. 30, 76 (1986). The court weighed the credible and reliable evidence in examining the totality of the circumstances and found that two Latino-preferred candidates in 2015 were serendipitously benefited by their incumbency and Anglo surnames, which, combined with other factors, attracted barely enough Anglo crossover votes to avoid defeat. (Docket Entry No. 151 at 72–73). The success

of these candidates does not defeat or avoid the dilution shown by the credible and reliable evidence.

Because neither the old District E in the 8–0 system nor the new District D and the at-large places under the 6–2 map and plan are Latino-opportunity districts, the court has not ordered the creation of five Latino-opportunity districts nor required the City to maximize Latino-majority districts. If Mr. Wheeler continues to win election in his former district (District E under the 8–0 map and plan; District D under the 6–2 map and plan), Pasadena Latinos may be able to win a fifth seat on the Council if they are otherwise successful in the four Latino-opportunity districts under the 8–0 map and plan. This outcome is neither certain nor required under the court's order.[2] (Docket Entry No. 151 at 105–06). Pasadena Latinos "were poised to elect their candidate of choice" and "were becoming more politically active, with a marked and continuous rise in Spanish-surnamed voter registration" precisely when the Mayor and City Council reduced the number of Latino-opportunity districts from a proportionate four-out-of-eight to a disproportionate three-out-of-eight. *LULAC*, 548 U.S. at 438–39. The City cannot rely on the successful reelection of an incumbent with an Anglo surname in an Anglo-majority district in 2015, and his possible reelection in 2017, to defeat a finding of dilution under the totality of the circumstances test. The City's argument depends on the court reweighing the evidence, and relying on evidence that was found less credible or reliable, to find and conclude that District D and the at-large places under the 6–2 map and plan are actually Latino-opportunity districts. This request does not raise a serious legal question of the sort that justifies the City's requested relief.

---

[2] If it occurs, it will be the first time Latinos have elected their candidate of choice in District B, despite having a significant citizen voting-age majority there under both maps and plans. (Docket Entry No. 151 at 105–06). It will also require that Mr. Wheeler continue to benefit from crossover voting based on his incumbency and Anglo surname. That is precisely the "sporadic[] and serendipitous[]" benefit to minority voters that the *Gingles* Court ruled would not overcome a finding of dilution under the totality of the circumstances. 478 U.S. at 76.

The fourth issue—whether the court properly found discriminatory intent—is irrelevant to the part of the injunction order the City wishes to stay.[3]  A court need not find discriminatory intent to order a remedy under § 2's "results test." *Gingles*, 478 U.S. at 35.  The court found that reversion to the 8–0 system was necessary to cure the dilution of Latino votes without regard to whether that dilution was intentional. (Docket Entry No. 151 at 105).  The City's arguments do not support a stay under this factor.

The court concludes that the City has not presented a substantial case on the merits that would support a stay of the court's order.  The City's contentions either directly contradict Supreme Court precedent, ask the court to reweigh the evidence and make different credibility and reliability findings, or present arguments that are irrelevant to the remedy at issue.  Even if the City had presented a substantial case on the merits, the balance of the equities heavily favors a denial of the requested stay.

**B.     Irreparable Injury to the City**

The City argues that immediately implementing the court's order will irreparably harm the City because when enforcement of a City ordinance is enjoined, the City "necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood of Greater Texas Surgical Health Services*, 734 F.3d 406, 419 (5th Cir. 2013).  The City cites the Fifth Circuit's grant of a stay in the voting rights case *Veasey v. Perry*, 769 F.3d 890, 895–96 (5th Cir. 2014), which reasoned that "[i]f the district court judgment is ultimately reversed, the State cannot run the election over again" and that "the State has a significant interest in ensuring the

---

[3]  As explained in the court's Memorandum and Opinion, a finding of discriminatory intent is required under § 3(c)'s preclearance remedy. (Docket Entry No. 151 at 86). The City does not ask the court to stay its preclearance order. (*See* Docket Entry No. 164).

7

proper and consistent running of its election machinery. . . ." *Id*.

The *Veasey* panel found the irreparable injury factor dispositive because the district court's order "substantially disturb[ed] the election process of the State of Texas just nine days before early voting [was to] begin[]." *Id*. at 892. The court's order would have enjoined the application of a statewide law, requiring the State to retrain 25,000 polling officials at 8,000 polling stations "by word of mouth alone," without sufficient time to reprint election manuals. *Id*. at 893. The Fifth Circuit looked to guidance from Supreme Court decisions holding that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Id*. (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam)); *see also North Carolina v. League of Woman Voters of N. Carolina*, 135 S.Ct. 6 (2014) (staying an October 3 injunction regulating an election for which early voting began October 16); *Husted v. Ohio State Conference of N.A.A.C.P.*, 135 S.Ct. 42 (2014) (staying an injunction affirmed on September 24 before an election for which early voting was to begin September 29); *but see Frank v. Walker*, 135 S.Ct. 7 (2014) (lifting the September 12 stay of an April injunction regulating an election for which early voting began October 20).

In this case, although candidate registration begins today, the candidate filing deadline is not until February 17, 2017, and early voting for the Pasadena City Council elections does not begin until April 24, 2017. The City is not on the "eve of an election" as the Fifth Circuit defined the phrase in *Veasey*. 769 F.3d at 894. Nor does this court's order require the extensive reprinting and retraining that concerned the *Veasey* panel about a statewide injunction. The court avoided redrawing Pasadena's election map for this very reason. (*See* Docket Entry No. 162 at 2 n.1). Under the court's order, the City will use the same map and plan it approved in 2011 and used as recently

8

as the 2013 election, in effect maintaining the prelitigation status quo.[4] Training documents and certifications under that map and plan remain available and readily reproducible. There is ample time to prevent and avoid voter confusion. Indeed, a stay restoring the 6–2 map after the widespread publication of the court's order would, if anything, cause voter confusion.

Although a governmental entity "necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws" whenever an ordinance is enjoined, *Planned Parenthood*, 734 F.3d at 419, a court "should be extremely reluctant to have an election take place under a law that a district court has found, and that [the Fifth Circuit] may find, is discriminatory." *Veasey*, 769 F.3d at 896 (Costa, J., concurring). Because the court found intentional discrimination, this factor can weigh only weakly in the City's favor. The government's interest in seeing its laws enforced does not, standing alone, outweigh the other factors. *Cf. Planned Parenthood*, 734 F.3d at 419 (staying injunction where government's interest was coupled with the State's strong showing of likely success on the merits).

### C. Substantial Injury to the Plaintiffs

The City argues that the "[u]se of a plan for the 2017 elections that produced actual equal electoral opportunity for Hispanics in the 2015 election will not injure the plaintiffs." (Docket Entry No. 164 at 12). The City argues that although two of the Latino-preferred candidates in the 2015 election are now term-limited from running for City Council again, one of those candidates, Ms. Van Houte, has declared her candidacy for Mayor and allegedly has "every opportunity [to] win again, especially since the citywide percentage of registered voters who are Hispanic has increased. . . ." (*Id*. at 12–13).

---

[4] The plaintiffs filed suit on November 12, 2014. The City held its first election under the 6–2 map and plan in May 2015.

9

The City relies again on its position that minority success precludes finding dilution.[5] That is not the legal standard. *See De Grandy*, 512 U.S. at 1014 n.11; *Gingles*, 478 U.S. at 76. For the reasons stated above, and at length in the court's Memorandum and Opinion, the City redistricted its election map and plan to drop from a proportional four Latino-opportunity districts down to three. (Docket Entry No. 151 at 69–75, 84–85). Dilution irreparably injures the plaintiffs' right to vote and to have an equal opportunity to participate in the political process. Remedies like monetary damages, or more limited injunction provisions, are inadequate to redress the injury and to prevent future harm. The Supreme Court has long treated dilution as infringing the right to vote. "Overweighting and overvaluation of the votes of those living here has the certain effect of dilution and undervaluation of the votes of those living there. The resulting discrimination against those individual voters living in disfavored areas is easily demonstrable mathematically. Their right to vote is simply not the same right to vote as that of those living in a favored part of the [jurisdiction]." *Reynolds v. Sims*, 377 U.S. 533, 563 (1964). "Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Id*. at 561–62; *see also Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.").

---

[5] The City's optimism over Ms. Van Houte's chances is also misplaced. Just because Ms. Van Houte was the Latino-preferred candidate in an at-large election between her and another Anglo Council incumbent does not mean that she will be the Latino-preferred candidate in a mayoral election, or that she can draw the same level of crossover voting to have an opportunity to win if she is the Latino-preferred candidate. The City cannot rely on its speculations about Ms. Van Houte's candidacy to defeat a finding of irreparable harm to the plaintiffs if the court's order of injunction is stayed.

The City's citation of cases staying an injunction against voting regulations, such as voter-identification laws, is not persuasive. These cases involve different facts and circumstances. And these cases do not diminish the weight properly given to the plaintiffs' injury here. "[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441 (1992). But where, as here, a court finds vote dilution, and finds that it was intended, holding an election under the dilutive map undermines the integrity of the democratic system. Courts denying recent stay requests in § 2 cases recognize this harm. *See, e.g.*, *Michigan State A. Philip Randolph Institute v. Johnson*, 833 F.3d 656, 669 (6th Cir. 2016), *stay denied*, 137 S.Ct. 28 (2016) (denying stay in a § 2 dilution case because "[a] restriction on the fundamental right to vote therefore constitutes irreparable injury" to the plaintiffs) (internal quotation marks and citation omitted); *Harris v. McCrory*, 159 F.Supp.3d 600 (M.D.N.C. 2016), *stay denied*, 136 S.Ct. 1001 (2016) (denying stay of an injunction ordered to remedy an intentional § 2 dilution even though absentee voting in an election was already underway). The irreparable harm to the plaintiffs' fundamental right to vote weighs heavily against a stay.

**D.    The Public Interest**

"As the [government entity] is the appealing party, its interest and harm merges with that of the public." *Planned Parenthood*, 734 F.3d at 419 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009). For the reasons stated above, the City has an interest in seeing its ordinances enforced, but because the court found intentional discrimination behind the ordinance in question, that interest can weigh only weakly in the City's favor.[6]

**IV.   Conclusion**

"[O]nce a [jurisdiction's] legislative apportionment scheme has been found to be

---

[6] See Part III.B. above.

unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan." *Reynolds*, 377 U.S. at 585.  The City's arguments for its likely success on the merits of its appeal either directly contradict Supreme Court precedent, ask the court to reweigh the evidence and make different credibility and reliability findings, or present arguments that are irrelevant to the remedy at issue.  Even if the City had presented a substantial case on the merits, the balance of the equities heavily favors a denial of the requested stay.

"In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of [a jurisdiction's] election laws, and should act and rely upon general equitable principles." *Id*.  Pasadena is not on the eve of an election.  Prospective candidates still have a month to file, and the election is over three months away.  The mechanics of complying with the court's order are simple because the City will use the map and plan it used in 2013.  Because the court found both an impermissible dilution of Latinos' votes under § 2 and a discriminatory intent to cause that dilution, the City's interest in seeing its ordinances enforced is heavily outweighed by irreparable injury to the plaintiffs' fundamental right to vote if the court's order of injunction is stayed pending appeal.

Pasadena's motion to stay, Docket Entry No. 164, is denied.

SIGNED on January 18, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge