# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

FILED
February 3, 2017

Lyle W. Cayce
Clerk

No. 17-20030

ALBERTO PATINO; MARIA MARI; PATRICIA GONZALES; MARIA CARMEN MENDOZA; FRANK BORREGO; GABRIEL ROCHA BARRETO; RICHARD SERNA; JOSEPH JOHN MARQUEZ,

Plaintiffs–Appellees,

United States District Court
Southern District of Texas
FILED

FEB - 3 2017

David J. Bradley, Clerk of Court

v.

CITY OF PASADENA,

Defendant–Appellant.

On Motion from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-3241

Before OWEN, ELROD, and COSTA, Circuit Judges.

PER CURIAM:*

Alberto Patino and others, who are citizens of voting age in the City of Pasadena, Texas, brought suit in federal district court alleging that the change in the method for electing City Council members from eight single-member districts (the 8-0 plan) to six single-member and two at-large districts (the 6-2

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

plan) diluted Latino votes in violation of § 2 of the Voting Rights Act.[1] The plaintiffs also alleged that the City intentionally discriminated on the basis of race when it enacted the 6-2 plan in violation of the Fourteenth Amendment. At the conclusion of a bench trial, the district court entered a final judgment in favor of the plaintiffs on both of these claims. The district court enjoined use of the 6-2 plan in the upcoming May 2017 elections for City Council and ordered that the City reinstitute the 8-0 plan. Pursuant to § 3(c) of the Voting Rights Act,[2] the court ordered the City to submit any future change to a voting map or procedure to the Department of Justice for preclearance. The City sought a stay from the district court of injunctive relief pending appeal. The court denied that motion. The City has applied for a stay of the district court's judgment and injunction pending appeal in this court. We deny the motion.[3]

**I**

This court considers four factors when deciding whether to grant a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[4]

The applicant bears the burden of showing that a stay is warranted.[5]

---

[1] 52 U.S.C. § 10301.

[2] 52 U.S.C. § 10302(c).

[3] We address only the issues necessary to rule on the motion for a stay pending appeal. Our determinations are for that purpose and do not bind the merits panel. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).

[4] *Id.* at 410 (internal quotation marks omitted) (quoting *Nken v. Holder*, 556 U.S. 418, 425-26 (2009)). This court has recognized, however, that "where there is a serious legal question involved and the balance of the equities heavily favors a stay . . . the movant only needs to present a substantial case on the merits." *In re Deepwater Horizon*, 732 F.3d 326, 345 (5th Cir. 2013) (internal quotation marks omitted) (quoting *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011)).

[5] *Nken*, 556 U.S. at 433-34; *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982).

## II

First, we clarify what is not at issue with regard to the motion for a stay. In its briefing, the City does not assert that the district court should have permitted the City to redraw the voting map to remedy the voter dilution found by the district court. Nor does the City contend that the preclearance requirement is relevant to its motion for a stay pending appeal. The City does not assert that use of the 8-0 plan "substantially disturbs the election process"[6] for the upcoming May election, such that a stay should issue on that basis.

The primary focus of the City's request for a stay is its contention that the election held in 2015 under the 6-2 plan demonstrated that Latino voters actually elected their preferred candidates in four of the eight districts (three single-member districts and one at-large district), and, therefore, that the 6-2 plan does not result in discrimination or Latino voter dilution. The City urges us to give deference to the 6-2 plan adopted by a majority of the Pasadena voters in a special election held to decide if the 8-0 plan should be replaced.

We recognize that the City will be irreparably injured absent a stay because the results of the upcoming May 2017 election cannot be undone if the election proceeds under the former 8-0 plan.[7] As to whether denial of a stay will injure the other parties interested in the proceeding, it appears that those who will be affected by the 2017 City Council election and favor the 8-0 plan would be injured by a stay while those who favor the 6-2 plan would be injured

---

[6] *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (explaining that court orders affecting upcoming elections can result in voter confusion and low voter turnout).

[7] *Veasey*, 769 F.3d at 896 ("If the district court judgment is ultimately reversed, the State cannot run the election over again . . . ."); *see also Planned Parenthood*, 734 F.3d at 419 (noting that when a law is enjoined the government "necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws"); *accord New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (REHNQUIST, CIRCUIT JUSTICE, in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

if the 6-2 plan is not employed. Because there are no concerns that using the 8-0 plan for the upcoming election will substantially disturb the election process, the public interest is congruent with the final resolution of the merits of this matter, and accordingly, the public interest factor favors neither the City nor the plaintiffs.

With regard to the likelihood of success on the merits, the district court began its analysis of whether there had been a violation of § 2 of the Voting Rights Act based on the factors set forth in *Thornburg v. Gingles*.[8] The Supreme Court explained in *Gingles* that "[t]his Court has long recognized that multimember districts and at-large voting schemes may 'operate to minimize or cancel out the voting strength of racial [minorities in] the voting population.'"[9] The Court then reasoned that "[m]inority voters who contend that the multimember form of districting violates § 2, must prove that the use of a multimember electoral structure operates to minimize or cancel out their ability to elect their preferred candidates."[10] The Court held that "the use of multimember districts generally will not impede the ability of minority voters to elect representatives of their choice" "unless there is a conjunction" of three circumstances.[11] Those circumstances are (1) "the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district," (2) "the minority group must be able to show that it is politically cohesive," and (3) "the minority must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred

[8] 478 U.S. 30, 50-51 (1986).

[9] *Id.* at 47 (alteration in original) (quoting *Burns v. Richardson*, 384 U.S. 73, 88 (1966)).

[10] *Id.* at 48.

[11] *Id.*

candidate."[12] The City does not dispute that the first two circumstances exist. It does dispute that the third circumstance has been established.

The Supreme Court explained in *Bartlett v. Strickland* that it is "only when a party has established the *Gingles* requirements" that "a court proceed[s] to analyze whether a violation [of § 2] has occurred based on the totality of the circumstances."[13] One among many factors in the totality of circumstances to be considered is proportionality, which "links the number of majority-minority voting districts to minority members' share of the relevant population."[14]

The district court concluded that the third circumstance of the three *Gingles* prerequisites exists and proceeded to analyze the totality of the circumstances. Further, in assessing the totality of the circumstances, the district court concluded that the 6-2 plan did not result in proportional representation of Latinos and that even if it did, other factors supported a finding that the 6-2 plan violated § 2. For reasons that we consider below, our focus is on whether the City established a likelihood of success on the merits of its arguments that the third *Gingles* circumstance was not established and that even if were shown to exist, the 6-2 plan has nevertheless resulted in proportionality.

## III

The district court found that 48.2% of the citizens of voting age in the City are Latinos, and that under the 8-0 plan in effect prior to 2015, Latinos were a majority of the citizens of voting age in four of the eight single-member districts. The court found that when the 2015 election occurred under the 6-2 plan, Latinos were a majority of citizen voting-age population and the majority

---

[12] *Id.* at 50-51 (citations omitted).
[13] 556 U.S. 1, 11-12 (2009).
[14] *Johnson v. De Grandy*, 512 U.S. 997, 1014 n.11 (1994).

of registered voters in three of the six single-member districts. The court further found that Anglo bloc voting had occurred in the City in the past and that "[i]n most elections, Anglo citizens vote sufficiently as a bloc to deny Latinos the election of their preferred candidates." The district court concluded that the 6-2 plan and voting map "drop[] Latinos' proportional opportunity for representation from around 44%, a close approximation of Latinos' citizen voting-age population in the City, to 33% (both figures counting the Mayor's seat on the Council)."

The City contends that there has been no showing of dilution or of discriminatory effect because Latinos have actually been successful in electing their preferred candidates under the 6-2 plan proportionate to their population in the City. The Latino-preferred candidates won in three of the single-member districts and one of the at-large districts in the 2015 election under the 6-2 plan, and accordingly, Latino-preferred candidates were elected to four of the eight City Council seats. The City additionally argues that there is an opportunity for Latinos to achieve greater-than-proportional success because 62.9% of the citizens of voting age in the single-member majority-minority district that failed to elect the Latino-preferred candidate in 2015 are Latino.

The City asserts various arguments flowing from these facts. One is that the third *Gingles* circumstance, "that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances . . . usually to defeat the minority's preferred candidate,"[15] cannot be established because of the success of Latino-preferred candidates. The contention that success in elections can demonstrate that no dilution of minority voting strength has occurred and that such success negates the existence of the third prerequisite in *Gingles* has logical appeal and finds support in the law. In *Gingles*, JUSTICE

[15] *Thornburg v. Gingles*, 478 U.S. 30, 51 (1986).

O'CONNOR, joined by CHIEF JUSTICE BURGER and JUSTICES POWELL and REHNQUIST, agreed with JUSTICES BRENNAN and WHITE that "consistent and sustained success by candidates preferred by minority voters is presumptively inconsistent with the existence of a § 2 violation."[16]

However, the district court concluded that the successes of Latino-preferred candidates in the 2015 City Council election was not dispositive. In that election, 70.6% of Latino voters supported one of two Anglo candidates for an at-large position, and the Latino-preferred candidate won. In that same election, the Latino-preferred candidates won two of the three majority-minority single-member districts, and another Latino-preferred candidate won in an Anglo-majority single-member district. But the district court reasoned that "special circumstances . . . prevented the defeat of the Latino-preferred candidate" in two contests in Anglo-majority districts (one at-large and one single-member). The district court noted that Wheeler, who won in an Anglo-majority single-member district, had an Anglo surname (though he in fact is Latino) and was an incumbent, and that Van Houte, who won an at-large seat, also had an Anglo surname and was an incumbent. The district court's conclusion in this regard was based on the Supreme Court's reasoning in *Gingles* that "the fact that racially polarized voting is not present in one or a few individual elections does not necessarily negate the conclusion that the district experiences legally significant bloc voting."[17] The Supreme Court observed that "special circumstances, such as . . . incumbency . . . may explain minority electoral success in a polarized contest."[18]

---

[16] *Id.* at 102 (O'CONNOR, J. concurring); *see also Bartlett*, 556 U.S. at 24 (2009) ("States can—and in proper cases should—defend against alleged § 2 violations by pointing to crossover voting patterns and to effective crossover districts. Those can be evidence, for example, of diminished bloc voting under the third *Gingles* factor. . . .").

[17] *Gingles*, 478 U.S. at 57.

[18] *Id.*

The City additionally contends that assuming the three *Gingles* prerequisite circumstances were demonstrated, and the district court permissibly reached the totality of the circumstances analysis, the success of Latino-preferred candidates establishes proportionality. The district court reasoned that, even assuming proportionality existed, other factors supported a finding that § 2 had been violated. The district court correctly recognized that proportionality is only one factor the Supreme Court has instructed courts to consider in assessing the totality of the circumstances in vote dilution claims.[19]

We are not persuaded that the likelihood of the City's success on the merits is so strong that this factor tips the balance in favor of a stay. Although the City has presented a serious legal question, the balance of the equities does not "heavily favor[]" a stay.[20]

The City contends that the district court finding of discriminatory intent was erroneous, relying in part on this court's en banc decision in *Veasey v. Abbott*.[21] We do not reach this issue. The district court finding of a discriminatory effect under § 2 of the Voting Rights Act is an independent basis for the imposition of the injunction requiring the May 2017 election to occur under the 8-0 plan.[22] Because we conclude that the City has failed to meet its heavy burden to justify a stay pending appeal with respect to the district

---

[19] *See League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 436 (2006); *De Grandy*, 512 U.S. at 1018-20 (1994).

[20] *In re Deepwater Horizon*, 732 F.3d 326, 345 (5th Cir. 2013) (internal quotation marks omitted) (quoting *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011)).

[21] 830 F.3d 216 (5th Cir. 2016) (en banc).

[22] *See Gingles*, 478 U.S. at 35 ("Congress substantially revised § 2 to make clear that a violation could be proved by showing discriminatory effect alone [without proving that a contested election mechanism was intentionally adopted] and to establish as the relevant legal standard the 'results test,' applied by [the Supreme Court] in *White v. Regester*," 412 U.S. 755 (1973)).

court's holding on discriminatory effect, we do not consider whether there is sufficient evidence of discriminatory intent.

* * *

For the foregoing reasons, the motion to stay is DENIED.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

February 03, 2017

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 17-20030 Alberto Patino, et al v. City of Pasadena
USDC No. 4:14-CV-3241

Enclosed is an opinion order entered in this case.

Sincerely,

LYLE W. CAYCE, Clerk

By: Erica Benoit
Erica A. Benoit, Deputy Clerk

Ms. Kathryn Kennon Ahlrich
Mr. David J. Bradley
Mr. Claude Robert Heath
Mr. Ernest I. Herrera
Ms. Denise Marie Hulett
Ms. Nina Perales
Ms. Kelly Spragins Sandill
Mr. Gunnar P. Seaquist